MILLER v DEPARTMENT OF MENTAL HEALTH

Docket No. 91115. Submitted December 17, 1986, at Lansing. Decided July 21, 1987. Leave to appeal applied for.

Petitioner, Carol Miller, had been a resident of the Caro Regional Mental Health Facility, a facility operated by the Department of Mental Health, for twenty-nine years when, in February, 1985, the department recalculated her liability for services provided by the department and determined that she would have to pay for the full cost of her care. In reaching its determination, the department included a trust established by petitioner's father for her benefit, which at the time of her father's death had a value of $172,079.42. The determination was affirmed by a hearing officer, but was reversed in an appeal by petitioner through her guardian, Vivian Lewis, to the Sanilac County Probate Court, George E. Benko, J. The department appealed from the probate court's ruling that the department may not include the trust among petitioner's assets in determining her ability to pay for her care.

The Court of Appeals *held:*

1. By statute, an individual receiving services from the Department of Mental Health is responsible for the cost of those services, although services cannot be denied merely because an individual is unable to pay. The determination of the financial liability of a resident of a state mental health facility is to be based on the resident's total financial situation.

2. The trust involved in this case is a support trust whose assets can be reached for payment for necessary services rendered to the beneficiary. The services provided to petitioner by the department are necessary services. The department therefore may properly consider the Miller trust in determining petitioner's financial liability.

3. The department, when calculating a resident's financial

REFERENCES

Am Jur 2d, Hospitals and Asylums § 6.
Am Jur 2d, Physicians, Surgeons and Other Healers §§ 378 *et seq.*
Am Jur 2d, Trusts §§ 184-186.
See the annotations in the Index to Annotations under Hospitals.
See the annotations in the Index to Annotations under Incompetent and Insane Persons.

liability, is not to exhaust or denude any person's financial net worth below an amount equal to fifty percent of the person's original net worth. In this case, the department erred in calculating petitioner's liability by establishing petitioner's original net worth at its level in 1958, when petitioner first became a resident, instead of its level in 1985, when the department last determined petitioner's financial liability.

4. The department's calculation of the cost of petitioner's care on a per diem basis was not improper.

Reversed and remanded.

1. MENTAL HEALTH — DEPARTMENT OF MENTAL HEALTH — FINANCIAL LIABILITY.

An individual receiving services from the Department of Mental Health is responsible for the cost of those services, although services cannot be denied merely because an individual is unable to pay; the determination of the financial liability of a resident of a state mental health facility is to be based on the resident's total financial situation (MCL 330.1804, 330.1810, 330.1818[c]; MSA 14.800[804], 14.800[810], 14.800[818][c]).

2. MENTAL HEALTH — DEPARTMENT OF MENTAL HEALTH — FINANCIAL LIABILITY.

The Department of Mental Health, when determining the financial liability of a person for whom mental health services are rendered by the department, may consider the resident's interest in a support trust established for his benefit (MCL 330.1818[c]; MSA 14.800[818][c]).

3. MENTAL HEALTH — DEPARTMENT OF MENTAL HEALTH — FINANCIAL LIABILITY.

The Department of Mental Health, when determining the financial liability of a person for whom mental health services are rendered by the department, may not exhaust any person's financial net worth below an amount equal to fifty percent of the person's original net worth; a person's original net worth should be determined each time the department determines or redetermines the person's financial liability (MCL 330.1826; MSA 14.800[826]).

4. MENTAL HEALTH — DEPARTMENT OF MENTAL HEALTH — FINANCIAL LIABILITY.

The Department of Mental Health may charge a person to whom it provides mental health services for the cost of such services on a per diem basis (MCL 330.1804; MSA 14.800[804]).

*Daniel E. Atkins,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Irene M. Mead,* Assistant Attorneys General, for respondent.

Before: M. J. KELLY, P.J., and SULLIVAN and D. R. CARNOVALE,* JJ.

D. R. CARNOVALE, J. The Department of Mental Health appeals as of right from a ruling of the probate judge that the assets of a certain support trust of which petitioner was the beneficiary could not be considered by the department in determining petitioner's liability for services provided by the department. We reverse.

Petitioner Carol Miller, age forty-five, has been a resident of the Caro Regional Mental Health Facility, a state mental health facility, for twenty-nine years, since 1958. In February, 1985, the department recalculated petitioner's liability for payment for services provided by the department and determined that she would have to pay for the full cost of her care. In reaching its determination, the department included as an asset of petitioner's a trust established in 1983 by petitioner's father, Dave C. Miller, of which petitioner was the beneficiary. Mr. Miller's sister, Vivian Lewis, was named as trustee. At the time of Mr. Miller's death in 1984, the trust was valued at $172,079.42. It was on the basis of the trust's assets that the department determined that Carol Miller could pay for her own care. A hearing officer affirmed the department's decision. However, the probate judge reversed the decision of the department and the

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

hearing officer and ruled that the trust could not be included as assets of Carol Miller's in determining her ability to pay for her care. The department appealed to this Court.

The legal issue before us is whether the state was permitted to consider the trust assets as an asset of Carol Miller's when determining her ability to pay for the department's services.

By statute, an individual receiving services from the department is responsible for the cost of those services, MCL 330.1804; MSA 14.800(804), although services cannot be denied merely because an individual is unable to pay. MCL 330.1810; MSA 14.800(810). Significantly, the determination of the financial liability of a resident of a mental health facility is to be based on the resident's total financial situation:

> A single individual's ability to pay shall be determined from a consideration of his *total financial situation.* Such consideration shall include, but need not be limited to, the following factors: income, expenses, insurance proceeds, number and condition of dependents, *assets* and liabilities. [MCL 330.1818(c); MSA 14.800(818)(c). Emphasis supplied.]

We believe that the department can consider the trust in the present case in determining petitioner's "total financial situation." Primary to our decision is a finding that the trust is a support trust rather than a discretionary trust. The distinction is crucial. In a discretionary trust, the trustee cannot be compelled to pay any part of the income or principal on behalf of the beneficiary. 1 Restatement Trusts, 2d, § 155(1), p 323; *Coverston v Kellogg,* 136 Mich App 504, 508; 357 NW2d 705 (1984). However, in a support trust, the trust assets can be reached for payment for "necessary

services rendered to the beneficiary or necessary supplies furnished to him." 1 Restatement Trusts, 2d, § 157(b), p 328; *Coverston, supra* at 512-513.

Article 3 of the instant trust states:

> In the event the Beneficiary Carol M. Miller, survives the Settlor, the Trustee shall pay to or extend on behalf of such Beneficiary so much of the income of the trust and, also, such amounts of principal (even to the extent of all) as the Trustee deems proper for the support, maintenance and welfare of said Beneficiary.

Based on this language, we conclude that the trust is a support trust rather than a discretionary trust. *Coverston, supra.* Moreover, we conclude that services provided by the department are "necessary services" within the meaning of 1 Restatement Trusts, 2d, § 157(b). See also *In re Sykes Estate,* 131 Mich App 49; 345 NW2d 642 (1983), lv den 419 Mich 935 (1984).

We believe that the Legislature intended to require residents who could afford to pay for the cost of their care to do so. Accordingly, it makes no sense to conclude on one hand that the trust funds can be reached for payment of "necessary services" provided by the department and then to conclude on the other hand that the trust funds cannot be used by the department in determining a resident's ability to pay for services provided. Therefore, we hold that a trust fund's assets that can be reached for the payment of "necessary services" provided by the department are assets that the department can consider in determining a resident's liability for the cost of the resident's care.

Other states that have considered the issue have reached a similar conclusion. See *Lackman v Dep't of Mental Hygiene,* 156 Cal App 2d 674; 320 P2d

186 (1958), and *Dep't of Mental Health & Developmental Disabilities v First Nat'l Bank of Chicago,* 104 Ill App 3d 436; 432 NE2d 1086 (1982).

*In re Sykes Estate, supra,* cited by petitioner, is inapposite. The issue there was whether the trustee abused its discretion in refusing to pay the department's claims against the beneficiary for the value of the department's services. The issue in the present case is whether a support trust's assets can be considered by the department in determining a resident's financial liability for services provided.

Petitioner raises two issues that we could refuse to consider because she has not filed a cross-appeal. *In re Chavez Estate,* 127 Mich App 430; 339 NW2d 35 (1983). Nonetheless, we will address both issues because they have been thoroughly briefed by both parties and because they involve questions of law for which all necessary facts have been presented. *Ledbetter v Brown City Savings Bank,* 141 Mich App 692; 368 NW2d 257 (1985).

First, petitioner claims the department's calculation of her financial liability was incorrect. We agree.

According to MCL 330.1826; MSA 14.800(826), when calculating a resident's financial liability, the department is not to "exhaust or denude any person's financial net worth below an amount equal to 50% of the person's original net worth." In the instant case, the department interpreted the term "original net worth" to refer to petitioner's net worth as of the time she first became a resident of the Caro facility in 1958 rather than as of the time it redetermined her financial liability. We conclude that a resident's original net worth should be determined each time the department determines or redetermines a person's financial liability. This would be consistent with the Legisla-

ture's intent, evident throughout the pertinent provisions, of keeping financial determinations current.

Second, petitioner argues that the department violated petitioner's equal protection rights by charging her a per diem rate for the cost of her care. We hold that the department's calculation of a resident's cost on a per diem basis is acceptable. To hold otherwise would place an unreasonable burden on the department. Significantly, the use of per diem charges is permitted in the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq.;* MSA 28.1701 *et seq.,* which allows the state to collect the cost of a prisoner's incarceration from the prisoner.

The decision of the probate judge is reversed. The case is remanded for recalculation of petitioner's financial liability in accordance with this opinion. We do not retain jurisdiction.