MILLER v DEPARTMENT OF MENTAL HEALTH

Docket No. 81754. Argued October 4, 1988 (Calendar No. 2). Decided
     June 6, 1989.

     The Michigan Department of Mental Health determined that
     assets of a trust of which Carol Miller, who is in the care of the
     department, is a beneficiary should be included in determining
     her financial ability to pay for her care. A hearing referee
     affirmed the department's determination, but the Sanilac
     County Probate Court, George E. Benko, J., reversed, finding
     that the trust was a discretionary trust and that Carol Miller
     had no ascertainable interest in its assets. The Court of Ap-
     peals, MICHAEL J. KELLY, P.J., and SULLIVAN and D. R. CARNO-
     VALE, JJ., reversed, finding the trust to be a support trust
     (Docket No. 91115). Vivian Lewis, as guardian of Carol Miller,
     appeals.
         In a unanimous opinion by Justice LEVIN, the Supreme Court
     held:
         Because the probate court ruled, without an evidentiary
     hearing, that the trust was a discretionary trust, and because
     the settlor's intent cannot be determined without such a hear-
     ing, the judgment of the Court of Appeals must be reversed and
     the case remanded for an evidentiary hearing. If it is deter-
     mined on remand that the interest of the plaintiff is as a
     beneficiary of a discretionary trust, she would not have an
     ascertainable interest in the assets of the trust, and thus the
     trust would not be an asset that the Department of Mental
     Health may claim to reimburse itself for services it rendered to
     her.
         1. Where a beneficiary of a trust is entitled to receive an
     ascertainable portion of its income or principal, creditors can
     reach the beneficiary's interest, absent a spendthrift clause.
     Ordinary creditors cannot reach a beneficiary's interest in a
     support trust because it would defeat the object of the trust,
     i.e., to provide an amount necessary for education or support.
     Nor can creditors reach a beneficiary's interest in a discretion-
     ary trust because of the nature of the interest which conditions
     receipt of any amount on the discretion of the trustee and thus
     is not ascertainable.
         2. In this case, the trust established by the beneficiary's

father did not establish an entitlement in her to receive a definite portion of the income or principal. It did not provide that the trustee should pay such amounts as are necessary for her support, maintenance, and welfare, but only such amounts of the principal as the trustee deems proper for those reasons. In construing a trust instrument, the intention of the settlor is paramount. It cannot be decided whether the probate court, in determining that the settlor in this case intended to create a discretionary trust, was clearly erroneous absent a supporting evidentiary record.

3. Nothing in the Mental Health Code or other pertinent statute supports the contention that the interest of a beneficiary in a discretionary trust is to be considered an asset within the meaning of § 818 of the code.

Reversed and remanded.

161 Mich App 778; 411 NW2d 856 (1987) reversed.

*Daniel E. Atkins* for the petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar, Patrick J. O'Brien,* and *Irene M. Mead,* Assistant Attorneys General, for the respondent.

Amicus Curiae:

*Hill, Lewis, Adams, Goodrich & Tait* (by *John D. Mabley*) for the State Bar of Michigan, Probate and Estate Planning Section.

LEVIN, J. The question presented is whether Carol Miller's interest in a trust established by her father is an asset that the Michigan Department of Mental Health can claim to reimburse itself for services rendered to her by the department.

We hold that if, as contended by Carol Miller, her interest in the trust is as a beneficiary of a discretionary trust, she would not have an ascertainable interest in the assets of the trust, and her interest in the trust would not be an asset that the department may claim. Whether the trust is a

discretionary trust depends, we agree with the probate judge, on the intent of her father as the settlor.

The judge ruled without an evidentiary hearing that the trust was a discretionary trust. We are of the opinion that the settlor's intent cannot in the instant case be determined without an evidentiary hearing concerning the factual context and the circumstances.

We reverse the judgment of the Court of Appeals and remand the case to the probate court for an evidentiary hearing.

I

Carol Miller has been in the care of the department since 1958.[1] It appears, although no evidentiary record was made, that neither she nor her family made payments to the department for her support.[2] In 1983, her father established a trust of which he was the beneficiary during his lifetime and which provided that, if Carol Miller survived him, the trustee shall pay so much of the income and such amounts of principal as the trustee deems proper for her support, maintenance, and welfare.

After her father died in 1984, the department determined that the assets of the trust should be included in determining her financial ability to pay for the services rendered to her by the department.[3] An administrative law examiner affirmed

---

[1] She appears through her guardian, Vivian Lewis.

[2] The department did receive, however, sums, less than $4,000 per year, from the Social Security Administration.

[3] The Mental Health Code provides that an individual, the husband or wife of the individual, and the legal father and mother of an unmarried individual who is less than eighteen years of age shall be financially liable for services provided to the individual by the department. MCL 330.1800; MSA 14.800(800), MCL 330.1804; MSA 14.800(804). Carol Miller was over forty when her father died.

the department's determination.[4]

The probate court reversed, finding that the trust established by Carol Miller's father was a discretionary trust and hence she did not have an ascertainable interest in the assets of the trust. The Court of Appeals reversed, finding that the trust was a support trust rather than a discretionary trust.[5]

II

There are, for the purpose of this discussion, three kinds of trusts. Firstly, a trust vesting in the beneficiary the right to receive some ascertainable portion of the income or principal. Secondly, a trust providing that the trustee shall pay so much of the income or principal as is necessary for the education or support of the beneficiary, called a support trust.[6] Thirdly, a trust providing that the trustee may pay to the beneficiary so much of the income or principal as he in his discretion determines, called a discretionary trust.[7]

The code further provides that a single individual's ability to pay shall be determined from a consideration of his total financial situation and that such consideration shall include "assets." MCL 330.1818; MSA 14.800(818).

The code also provides that no person shall be denied services because of an inability to pay therefor on the part of the individual, the spouse, or the parents. MCL 330.1810; MSA 14.800(810).

[4] The procedure is provided for in MCL 330.1834; MSA 14.800(834), MCL 330.1836; MSA 14.800(836).

[5] Miller v Dep't of Mental Health, 161 Mich App 778; 411 NW2d 856 (1987).

[6] Except as stated in §§ 156 and 157, if by the terms of a trust it is provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it. [1 Restatement Trusts, 2d, § 154, p 320.]

[7] Except as stated in § 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary

Where the beneficiary is entitled to receive an ascertainable portion of the income or principal, creditors can reach the beneficiary's interest unless there is a spendthrift clause providing that the beneficiary's interest shall not be transferable or subject to the claims of creditors.[8] Without regard to whether there is a spendthrift clause, ordinary creditors cannot reach a beneficiary's interest in a support trust because the nature of the beneficiary's interest, being limited to such amount as is necessary for education or support, precludes recognition of the claims of creditors that would defeat the object of the trust.[9] Similarly, without regard to whether there is a spendthrift clause, creditors cannot reach a beneficiary's interest in a discretionary trust because of the nature of the beneficiary's interest.[10] The beneficiary's receipt of any amount depends on the trustee's exercise of his discretion, and thus the benefi-

---

only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal. [1 Restatement Trusts, 2d, § 155(1), p 323.]

[8] Except as stated in §§ 156 and 157, if by the terms of a trust the beneficiary is entitled to the income from the trust property for life or for a term of years and it is provided that his interest shall not be transferable by him and shall not be subject to the claims of his creditors, the restraint on the voluntary and involuntary transfer of his right to the income accruing during his life is valid. [1 Restatement Trusts, 2d, § 152(1), p 311.]

See also reporter's notes accompanying 1 Restatement Trusts, 2d, § 154, pp 320-321.

[9] See n 6 and reporter's notes accompanying 1 Restatement Trusts, 2d, § 154, pp 320-321.

See In re Dodge Estate, 281 NW2d 447 (Iowa, 1979).

[10] See n 7 and reporter's notes accompanying 1 Restatement Trusts, 2d, § 155, pp 323-324. But see 1 Restatement Trusts, 2d, § 155(2), p 323.

ciary does not have an ascertainable interest in the assets of a discretionary trust.

Although ordinary creditors cannot reach the ascertainable interest of the beneficiary of a trust with a spendthrift clause or the interest of a beneficiary of a support trust, the interest of a beneficiary of such a trust can be reached to enforce claims by the beneficiary's wife or child for alimony or support, for necessaries furnished the beneficiary and to satisfy a claim of the United States or of a state.[11] This exception does not apply to the interest of a beneficiary in a discretionary trust,[12] and thus it is determinative of the instant controversy whether the trust established by Carol Miller's father is a support trust or a discretionary trust.

### III

The trust established by Carol Miller's father provided that the trustee shall pay the income to her father during his lifetime and such amounts of the principal as he might choose to withdraw. It further provided that, if Carol Miller survived him, the trustee shall pay "so much of the income" and "such amounts of principal (even to the extent of all) as the Trustee deems proper for the support, maintenance and welfare of " Carol Miller.[13]

### A

The trust instrument did not contain a spendthrift clause. This is of no consequence. The claim

[11] 1 Restatement Trusts, 2d, § 157, p 328.

[12] But see n 10.

[13] There was a power to accumulate so much of the income as was not paid and to add it to the principal. The trust instrument also provided that if Carol Miller did not survive her father or upon her death, the trustee shall pay the remaining principal to the then living brothers and sisters of the father and his deceased wife.

here is asserted by the state and thus could be asserted without regard to whether there was a spendthrift clause unless this is a discretionary trust.[14]

The trust established by Carol Miller's father did not establish an entitlement in her to receive a definite portion of the income or principal. The question is thus, again, whether the trust established was a trust established for her education or support, a support trust, in which event the state may assert its claim, or a discretionary trust, in which event its claim cannot be asserted because her interest in the assets is not ascertainable.

The trust corpus was $172,079.42 at the time Carol Miller's father died. The department subsequently determined that the amount required to pay for her care was $55,480 a year. The department claims that the trustee was obliged by the terms of the trust instrument to expend from the income and principal of the trust $55,480 a year for Carol Miller's support and maintenance until the trust corpus was exhausted, and that the trustee did not have any discretion in the matter.

The trust instrument did not provide that the trustee shall pay so much of the income and such amounts of principal as "are necessary" for Carol Miller's support, maintenance, and welfare, but rather so much of the income and such amounts of principal as the trustee "deems proper" for her support, maintenance, and welfare.

In some circumstances, the words used, "deems proper," might be read as creating a support trust, vesting in the trustee only the discretion to determine the amount necessary for support of the beneficiary and establishing an entitlement on the part of the beneficiary to enforce payment of such

---

[14] See, however, n 10.

amount as the trustee determines should be paid for support in the exercise of a discretion that is judicially reviewable for abuse of discretion. In other circumstances, those words might be read as creating a discretionary trust vesting in the trustee complete discretion regarding the amount, if any, to be paid for the support of the beneficiary.[15]

Carol Miller's father had no legal obligation to pay any amount for her support.[16] It appears that he had not paid any amount to the department for her support, and that the only payment to the department for her support other than by the state over many years were sums received from the Social Security Administration, less than $4,000 a year. Those are, however, only impressions. No evidentiary record was made in the probate court concerning the factual context or the circumstances.[17]

---

[15] A trust instrument may establish a discretionary trust although the words "uncontrolled" are not added before the word "discretion." See reporter notes accompanying 1 Restatement Trusts, 2d, § 155, illustration 1, p 324.

[16] See n 3.

[17] In the interpretation of the words and other conduct of the settlor, circumstances throwing light upon the settlor's intention are relevant, and evidence of such circumstances is admissible except when excluded by the parol evidence rule, by the Statute of Frauds or the Statute of Wills, or by some other rule of law. [1 Restatement Trusts, 2d, § 24, Comment, p 67.]

Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by him as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress, mistake, or other ground for reformation or rescission, is not admissible to contradict or vary it. On the other hand, if the meaning of the writing is uncertain or ambiguous, evidence of the circumstances is admissible to determine its interpretation. [1 Scott, Trusts, § 38, pp 403-404.]

Similarly, see *Flynn v Brownell,* 371 Mich 19, 27; 132 NW2d 153 (1963).

The probate judge said that in construing a trust instrument the intention of the settlor is paramount, and we agree.[18] The judge was of the opinion that the settlor intended to create a discretionary trust; the judge said that the trustee had "complete discretion as to whether or not Carol was to receive any payment from the trust and the amount and the frequency of the payment for her support" and that her interest in the trust "is unascertainable and [it] cannot be determined if she would receive anything." We cannot decide whether the judge's determination was clearly erroneous absent a supporting evidentiary record concerning the factual context and the circumstances. We remand to the probate court so that such a record can be made.

B

The Court of Appeals has addressed the question presented in other cases.

In *In re Sykes Estate,* 131 Mich App 49, 52; 345 NW2d 642 (1983), the settlor had established a trust providing that the income and principal would be payable for the benefit of his wife and son in such proportions as the trustee shall deem necessary to provide for their proper care, support and welfare. The Court of Appeals, in deciding that a discretionary trust had been established, considered that the son had spent much of his adult life in jails in Michigan and in other states, and that the settlor had provided "only occasional and relatively small amounts to his son for his support during his lifetime." The Court said that "the son's interest in this discretionary trust is unascertainable, i.e., he could not be certain that he would ever receive anything. Moreover, we find

---

[18] *In re Sykes Estate,* 131 Mich App 49; 345 NW2d 642 (1983).

that the settlor did not intend to be the sole source of support of his son."[19]

On remand, after an evidentiary record has been made, it will be for the probate judge to decide whether Carol Miller's father intended, when he established the trust and added a provision for her benefit, to *require* the trustee to pay such amounts as might be needed, $55,480 a year or some lesser amount, to defray the cost of caring for her by the department or whether the provision in the trust instrument for Carol Miller was designed rather to permit the trustee, in the exercise of the discretion conferred, to, for example, pay for needs not covered by the department or the contingency that she might be discharged by the department and be

[19] In *In re Jastremsky,* unpublished opinion per curiam of the Court of Appeals, decided December 30, 1986 (Docket No. 84871), the Court similarly determined that a discretionary trust had been established, and that the interest of the beneficiary, the son of the settlor, could not be valued as an asset under § 818 of the Mental Health Code. See n 3. The Court noted that, as in *Sykes,* the settlor had not been supporting his adult child before his death. The son had been a resident of a state institution for a number of years. The trust instrument recited the foregoing, and provided that the trustees shall pay "such of the net income and such part or parts of the capital thereof as my said trustees considered advisable to or for the benefit of my said son during his lifetime." The Court said "we conclude that the beneficiary's interest in the discretionary trust was unascertainable and, thus, should not have been included as an asset for the purpose of determining ability to pay and financial liability for services rendered."

The Court of Appeals in the instant case did not say why the trust established in *In re Sykes Estate* was a discretionary trust while the trust established in this case was a support trust other than to say that on the basis of the language of the trust instrument establishing the trust, "we conclude that the trust is a support trust rather than a discretionary trust. *Coverston* [v *Kellogg,* 136 Mich App 504; 357 NW2d 705 (1984)]."

In *Coverston,* the Court had ordered the trustees to pay $10,000 as lump-sum alimony. The Court acknowledged that the terminology of the trust instrument purported to vest the trustees with the absolute unfettered discretion to use the income and if necessary the principal for the benefit of the defendant husband's welfare and maintenance, but said that its examination of the remainder of the trust instrument did not persuade it that the settlor granted the trustee the power to refuse to apply trust funds for the benefit of her son.

in need of care and support outside an institution maintained by the department or some other governmental body.

If the judge decides that Carol Miller's father did not intend to require the trustee to pay such amounts as might be needed or some lesser amount to defray the cost of caring for her by the department and that a discretionary trust was established, then the beneficiary, Carol Miller, had no ascertainable interest in the trust income or principal, and her interest would not be subject to the claims of creditors including a claim asserted by the state.

C

We have considered cases from other jurisdictions cited in the opinion of the Court of Appeals.[20]

We have also considered the department's contention that the Legislature intended that the interest of a beneficiary in a discretionary trust be considered an asset of the beneficiary within the meaning of § 818 of the Mental Health Code[21] in determining the individual's total financial situation. There is nothing in the Mental Health Code or any other pertinent enactment of the Legislature that supports this contention. Testators and settlors have established discretionary trusts in the expectation, justified under the established common law, that a beneficiary's interest is not

---

[20] *Lackmann v Dep't of Mental Hygiene*, 156 Cal App 2d 674; 320 P2d 186 (1958), and *Dep't of Mental Health & Developmental Disabilities v First Nat'l Bank of Chicago*, 104 Ill App 3d 461; 432 NE2d 1086 (1982), were based on the construction of state statutes.

We have also considered illustration 7, 1 Restatement Trusts, 2d, § 187, pp 402-410, which concerns a trustee who took "a mistaken view as to the extent of his powers or duties . . . ." *Id.*, p 405. The question here presented is what are the extent of the trustee's powers and duties.

[21] See n 3.

subject to the claims of creditors, including claims of the United States and of the state, because the beneficiary does not have an ascertainable interest in the assets of the trust. Absent an express statement from the Legislature, this Court would not be justified in concluding that the Legislature intended to defeat those expectations.

Our disposition might make it unnecessary to address the department's cross-appeal concerning the construction placed by the Court of Appeals on the term "original financial net worth" as used in § 826 of the Mental Health Code.[22] We intimate no opinion regarding the construction of that term by the Court of Appeals. If the probate judge decides that the trust established for Carol Miller is not a discretionary trust and the Court of Appeals affirms that determination,[23] the department may file with this Court an application for leave to appeal on the statutory construction issue.

Reversed and remanded to the probate court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[22] The statute provides that the department shall not "exhaust or denude" any person's financial net worth below an amount equal to fifty percent of the person's original financial net worth. MCL 330.1826; MSA 14.800(826).

The Court of Appeals declared that the department erred in calculating original net worth on the basis of Carol Miller's net worth as of the time, in 1958, that she first became a resident of a facility operated by the department instead of on the basis of the level in 1985 when the department last determined her financial ability.

[23] We recognize that the decision of the Court of Appeals on the construction of § 826 is, in the instant case, the law of the case on any further review by the Court of Appeals, subject to further appeal to this Court.