191 Mich. App. 514 (1991)
479 N.W.2d 25
In re JOHANNES TRUST (McKEON v DEPARTMENT OF MENTAL HEALTH)
Docket No. 124641.
Michigan Court of Appeals.
Decided October 21, 1991, at 9:00 A.M.
Beier Howlett (by Mary T. Schmitt Smith), for the petitioner.
Frank J. Kelley, Attorney General, Gay Secor Hardy, Solicitor General, and Alan F. Hoffman, Assistant Attorney General, for the respondent.
Before: GILLIS, P.J., and SAWYER and REILLY, JJ.
PER CURIAM.
Respondent appeals from an order of the probate court establishing a trust agreement and appointing a trustee as requested by petitioner. We affirm in part and remand.
Petitioner is the guardian of her developmentally disabled sister, Martha Johannes. Martha resides in an apartment under a program administered by the Department of Mental Health's Macomb-Oakland Regional Center. Petitioner has been Martha's guardian since July 7, 1987, and the State of Michigan has been paying for the cost of Martha's care since 1986.
Petitioner and Martha, among other individuals, were beneficiaries under the will of their aunt, Bertha Lammers, who died in the State of Illinois. That will provided in pertinent part as follows:
(b) All the balance of my said estate shall be divided equally among the children of my brothers *516 and sisters, the descendants of any deceased nephew or niece to take per stirpes the share such deceased nephew or niece would have taken if living.
Martha's share of the estate amounted to $10,813.52, which petitioner deposited into a savings account.
Petitioner sought the creation of a trust, which was to be funded with the proceeds of the savings account into which Martha's share of Aunt Bertha's estate was deposited, along with certain social security benefit payments which petitioner indicates were not required to be applied for the cost of Martha's care. Petitioner indicated that she sought creation of the trust because Aunt Bertha, before her death, had told petitioner that petitioner should hold the funds for Martha and that the funds were not to be used for Martha's regular support, care, and maintenance costs. Rather, Aunt Bertha indicated that the funds were to be used for medical costs not covered by Martha's insurance program and for recreational and pleasure needs. Under the terms of the trust, all distribution of income and principal would be at the sole discretion of the trustee and any distributions from the trust were to supplement benefits Martha received from any governmental or private assistance program in order to maximize the quality of Martha's life. Petitioner was to be the original trustee under the trust.
The trial court granted the petition to establish the trust and appoint a trustee. Thereafter, respondent moved to set aside the trial court's order because of lack of notice. The trial court did set aside the order but, following a hearing, again granted the petition to establish the trust and appoint a trustee.
*517 An individual who receives services from the Department of Mental Health is financially liable for those services and the department, subject to certain restrictions, may attach the assets and income of those individuals to pay for the services provided by the department. See MCL 330.1804; MSA 14.800(804), MCL 330.1818; MSA 14.800(818), and Miller v Dep't of Mental Health, 432 Mich 426, 428-429; 442 NW2d 617 (1989).
First, we note that the creation of the trust itself is not improper or invalid. Petitioner is certainly entitled to create a trust for the benefit of her sister. Thus, to the extent that the trial court approved the creation of the trust and appointed a trustee, the trial court acted properly and respondent's request that this Court set aside the order creating the trust and appointing the trustee must be denied. Rather, the question that must be resolved is whether Martha's creditors, particularly the respondent, can reach part or all of the res of the trust and whether respondent is entitled to the alternate relief requested, that we reverse the court's holding that the trust funds are protected from a creditor's reach.
It is not disputed that the trust at issue in this case is a discretionary trust. Under a discretionary trust, the trustee may pay to the beneficiary as much of the income or principal as the trustee in his discretion determines to be appropriate. Miller, supra at 429. Where the trust is discretionary and the beneficiary has no right to a disbursement from the trust other than what the trustee in his sole discretion chooses to distribute, the beneficiary's creditors cannot compel the trustee to pay any part of the income or principal in order that the creditors may be paid. Id. at 429-430, n 7, citing 1 Restatement Trusts, 2d, § 155(1), p 323. However, it must be noted that the Miller case involved a *518 situation in which the settlor of the trust was a person other than the beneficiary of the trust.
The general rule that creditors cannot compel the trustee of a discretionary trust to make a payment of income or principal applies only in those cases where the settlor of the trust is an individual different than the beneficiary of the trust. Under 1 Restatement Trusts, 2d, § 156, where the settlor is a beneficiary of the trust, the creditors can reach the maximum amount that the trustee could pay to the beneficiary under the terms of the trust:
(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.
(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.
Respondent does not cite any Michigan authority that has affirmatively adopted the rule set forth in § 156 of the Restatement, and our own research has failed to discover a case that either accepts or rejects this rule. However, the Supreme Court, in Miller, supra, did cite with approval the Restatement on a number of occasions. Furthermore, the rule stated in the Restatement promotes a valid public policy: A person ought not to be able to shelter his assets from his creditors in a discretionary trust of which he is the beneficiary and thus be able to enjoy all the benefits of ownership of the property without any of the burdens. Accordingly, we find the Restatement to be persuasive in this regard and conclude that the rule should be applied. Thus, if Martha can be considered *519 to be the settlor of the trust, her creditors may compel payment from the trust to the maximum amount that is within the trustee's discretion to pay.
This brings us to the question of who is the settlor of the trust and the consequences of that conclusion. Had Aunt Bertha been the settlor of the trust, by either establishing the trust as a term in her will or by an inter vivos transfer to Mary with instructions to hold it in trust for Martha's benefit, then the decision in Miller would apply and respondent could not reach the assets of the trust or compel petitioner as trustee of the trust to make the payment. However, the trial court specifically found that petitioner, not Aunt Bertha, was the settlor of the trust, and petitioner has not filed an appeal challenging that determination.
If petitioner is the settlor of the trust, as the trial court found, then Miller would also apply and respondent could not reach the assets placed in trust by petitioner as settlor. Our conclusion here is restrictive in that it is necessary that the property placed in trust by petitioner as settlor be property to which petitioner had legal title in her individual capacity. This is a simple application of Miller and the principle that the creditors of a beneficiary cannot reach the assets placed in trust other than those assets that belong to the beneficiary.
The final possibility is that Martha herself is the settlor of the trust. If Martha is the settlor of the trust, then the rule set forth in § 156 of the Restatement, which we adopt as the rule of law in Michigan, applies and respondent can reach the assets of the trust that were placed in trust by the beneficiary, i.e., Martha. This would include any assets to which Martha held legal title, though *520 administered by petitioner in her role as guardian, or assets that were held by petitioner in her guardianship capacity.
Petitioner is certainly a settlor of the trust inasmuch as she created the trust. See 1 Restatement Trusts, 2d, § 3(1). To this extent, the trial court did not err in finding that petitioner was the settlor of the trust. However, if part or all of the assets used to fund the trust came from Martha, then she, too, is a settlor of the trust. See, e.g., Guaranty Trust Co of New York v New York Trust Co, 297 NY 45, 50-51; 74 NE2d 232 (1947) ("the person who furnishes the consideration for the creation of a trust is the settlor").
Combining these principles, we arrive at the conclusion that Martha's creditors can reach the assets of the trust and compel payment in the maximum amount that would be in the trustee's discretion to disburse with respect to that portion of the assets that came from Martha, but not with respect to any portion of the trust that came from other individuals, particularly petitioner. This leads to a question we cannot definitively answer on the basis of the record before us, namely, whether the corpus of the trust was funded by assets to which Martha had legal title or to which petitioner had legal title.
With respect to Martha's inheritance from Aunt Bertha, there are two questions that must be answered. However, the record is not sufficiently clear to allow an answer at this time. First, there is the question of to whom Aunt Bertha's estate paid Martha's share of the inheritance. If the estate, for whatever reason, paid the inheritance to petitioner rather than to Martha, then legal title in fact vested in petitioner and, with respect to the inherited funds, petitioner is the settlor and *521 the trust assets could not be reached by Martha's creditors.[1]
Assuming that the estate did pay the money to Martha and that legal title to the inheritance did initially vest in Martha, then the second question arises, which is what did petitioner do with those funds after they were received. The record discloses only that petitioner placed those funds in a bank account. The record does not disclose in whom legal title to that bank account vested. If legal title to the account vested in Martha alone, and petitioner's only interest or authority with respect to that account was in her role as guardian, then the funds that flowed from that account into the trust represents a payment into trust by Martha as legal owner of those funds, necessitating the conclusion that Martha was the settlor of the trust with respect to those funds and that those funds are reachable by her creditors. If, however, petitioner had legal title to that bank account, then the necessary conclusion is that petitioner had converted ownership of the funds to herself and petitioner is, therefore, the settlor of the trust with respect to those funds. In such a case, Martha's creditors could not reach those funds held in trust except to the extent that a creditor has the right to seek recovery of property which had belonged to the debtor but which was converted by a third party.[2]
*522 Finally, if the bank account was held as a joint tenancy between petitioner and Martha, the trial court would need to determine whether the transfer of the property to the trust fund took the form of petitioner acting in her role as guardian, in which case the funds would represent a transfer by Martha, or whether she acted in her individual capacity, in which case the court would again need to reach the conclusion that petitioner had converted ownership of the funds to herself and thereafter funded the trust.[3]
In order to answer these questions, further facts must be determined by the trial court. Specifically, on remand, the trial court must determine whether Martha or petitioner held legal title to the funds that form the corpus of the trust at the time of the transfer to the trust, because only funds to which Martha held legal title at the time of the transfer can be reached by respondent. If legal title still vested in Martha and petitioner merely transferred the funds into trust in her role as guardian, then Martha is deemed to be the settlor of the trust with respect to those funds, and those funds are reachable by respondent. Alternatively, if Martha's inheritance had been paid to petitioner in her individual capacity, or if petitioner had converted title of the funds to herself, then she is the settlor of the trust and the funds are not reachable by respondent.[4]
*523 Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.
REILLY, J. (concurring).
I concur that the trial court properly determined that a trust was created by petitioner, who may serve as trustee, and that Martha's creditors should be permitted to reach the assets of the trust and compel payment in the maximum amount that would be in the trustee's discretion to disburse with respect to that portion of the assets that came from Martha, but not with respect to any portion of the trust that came from other individuals, particularly petitioner. I would remand to determine what funds, if any, were legally attributable to Martha and therefore subject to the claims of respondent.
NOTES
[1] We recognize that should this be true, it may very well represent an improper administration of Bertha's estate in that it appears that the estate should have paid the funds to Martha. However, if this is the case, that is a matter to be brought before the appropriate court in Illinois, where the estate was probated, and respondent would have to seek whatever remedy Illinois law might allow.
[2] This represents a question that is not currently before us, and we decline to determine what rights, if any, a creditor has in such a situation. If resolution of this question becomes necessary, we leave it to the appropriate trial court to determine whether respondent as a creditor of Martha has the standing to seek return of any converted funds.
[3] We have not separately analyzed the treatment of the deposits to the bank account from the social security payments. Petitioner has represented that those payments are not required to be paid toward Martha's support. If this is the case, and respondent cannot reach those funds anyway, then we need not determine in this proceeding whether they could properly be included in the corpus of the trust. Assuming that respondent could reach those funds, then the trial court would have to determine the state of ownership of the bank account and determine whether the funding of the trust came from Martha or whether petitioner had first converted the ownership of the funds to herself and then funded the trust herself.
[4] Except, as discussed above, to the extent that respondent may have standing in the court of appropriate jurisdiction to seek to compel petitioner to return those funds.