*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CHARLES C. KALBACH AND BETTY J. KALBACH TRUST.

PETER KALBACH,

Appellant,

v

THOMAS D. KALBACH,

Appellee.

UNPUBLISHED
May 14, 2025
10:30 AM

No. 367392
Benzie Probate Court
LC No. 22-000120-TV

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Appellant appeals as of right the probate court's opinion and order reforming the trust to remove certain real property, transfer the property to a deceased beneficiary's estate, and ultimately distribute the property to appellee in accordance with the beneficiary's will. We affirm.

## I. BACKGROUND

In 2006, Charles C. Kalbach Sr. and Betty J. Kalbach created the Charles C. Kalbach and Betty J. Kalbach Trust (the Trust) and transferred their property to the Trust. Both settlors[1] were named as trustees, and the Trust was to provide for their financial needs during their lifetimes. The settlors had five children: Barbara L. Kalbach, Brett L. Kalbach, Charles C. Kalbach Jr., appellant, and appellee. The Trust named Barbara and Brett as both successor trustees and primary beneficiaries, and explicitly provided that the settlors intended not to name their other children as beneficiaries despite having "great love and affection for" them. The Trust provided that, once one of the settlors died, the trustee was to reorganize the Trust into multiple smaller trusts—Trust

---

[1] Although the lower court proceedings used both "settlor" and "grantor" interchangeably, we will use the term "settlor" for consistency.

A, B, and C—in a complex structure apparently intended to minimize certain tax liability. These smaller trusts would be used to provide for the financial needs of the surviving settlor. The Trust contained somewhat contradictory provisions concerning reorganization of Trust property after the surviving settlor died—some provisions provided for a complex reorganization for tax purposes, while other provisions called for a different reorganization with no reference to this complex tax structuring.

What is clear, though, is that upon the surviving settlors' death, the Trust's property was to be divided into two equal shares for Barbara and Brett, and distributed to them as soon as possible. The Trust provided for a number of scenarios in which beneficiaries might predecease distribution from the Trust. If a primary beneficiary died prior to "receiving their entire share," the remaining share was to be distributed to the other beneficiary. After the beneficiaries' shares were divided into equal halves, if a primary beneficiary or their heirs "predecease[d] complete distribution of his or her share, and there [was] no other direction for allocation and distribution," the remaining share was to be distributed to the primary beneficiary's descendants. The Trust also created a power of appointment, and, if a beneficiary died before being entitled to distribution from the Trust, the beneficiary's share was to be distributed according to any will of the deceased beneficiary so long as that will referenced the power of appointment. Finally, if all descendants of the settlors were deceased and there were no other directions from the Trust, the Trust's property was to be distributed to the settlors' heirs according to the laws of intestate succession except that no property was to be distributed to the settlors' parents, siblings, aunts, or uncles.

The parties' dispute revolves around a piece of real property located in Benzie County (the Property), which was the primary asset of the Trust.[2] Charles Sr. died sometime in 2011. In October 2014, Betty, as the surviving settlor, executed an amendment to the Trust purporting to include a specific bequest to Barbara and Brett, namely three acres of the Property to Barbara and eight and a half acres of the Property to Brett in fee simple. All other aspects of the Trust remained unaltered. In December 2015, Betty executed a quitclaim deed purporting to convey the Property to Barbara and Brett as joint tenants with the right of survivorship while reserving a life estate for herself. Betty died in November 2016.

Brett died in December 2016 without a will or descendants. In April 2021, Barbara executed a warranty deed purporting to convey the Property to herself with a defeasible remainder to appellee and his wife. Barbara retained the right to dispose of the Property during her lifetime, but if she had not done so at the time of her death, the Property would transfer fully to appellee and his wife. Five days later, Barbara died without descendants but with a will devising her estate to appellee. At the time of both Barbara's and Brett's deaths, the Property had not been distributed to them. In fact, the parties agree that the Trust was never properly administered and that no property was ever distributed to Barbara or Brett after the settlors' deaths.

In June 2022, appellee petitioned the probate court to appoint himself as successor trustee. Because of objections, the court appointed a neutral successor trustee. Appellee later petitioned the court for instruction. The crux of his position was that, under the circumstances, the Trust

---

[2] The record is bereft of evidence of any other asset held within the Trust.

should be distributed to the estate of Barbara—and ultimately to appellee via Barbara's will—because this was consistent with the settlors' intent.

The successor trustee submitted a memorandum opining that the Trust was "confusing, contradictory and incomplete and therefore, in need of court guidance and/or reformation regarding its administration." She believed that the Property had never properly been conveyed out of the Trust, which meant that the Trust's terms controlled. However, characterizing the Trust as "a hodgepodge of confusing, inconsistent or inapplicable provisions regarding trust asset distribution after the deaths of the named beneficiaries," the successor trustee did not believe that the Trust provided for the present situation in which the primary beneficiaries had died without any descendants and without receiving any distributions from the Trust. She opined that, on the basis of the Trust's terms, there were no beneficiaries who could receive property, and she assumed that the settlors did not anticipate or want this outcome. She discussed mediation as a possible solution or, alternatively, reformation in order to determine the settlors' intent.

Appellant objected to appellee's petition for instruction. Appellant argued that the Trust became irrevocable upon the death of Charles Sr., which prevented Betty from transferring Trust property to herself or others. Appellant also pointed to the Trust's spendthrift clause and contended that it prevented Betty from transferring her interest as a beneficiary. Additionally, appellant maintained that Barbara's will did not control both because of the Trust's spendthrift clause and because, as a beneficiary of real property within a trust, Barbara had no interest in that property. The only way for Barbara's will to control was if she had explicitly referenced the power of appointment in her will and met other certain Trust conditions, which did not occur. Appellant asserted that this was "a rare instance of the trust having truly failed," and contended that this led to a "resulting trust," which meant that the Trust's property should be divided equally among the settlors' three remaining children.

Appellee countered that Betty's actions as the surviving settlor provided clear evidence that she intended for Barbara to receive the Property, which by extension meant her estate. In support of this argument, appellee relied heavily on the 2015 deed; he conceded that the deed did not represent a valid conveyance but contended that it represented the best and most recent evidence of Betty's intent regarding the Property. Namely, it showed that Betty intended for the Property to go to Barbara and Brett, and how, if one of them died, the other would receive a full interest in the Property. Given that Barbara survived Brett, the Property should have gone to her. Appellee argued that the Trust was confusing and ambiguous, which allowed the probate court to look outside the Trust to ascertain intent.

The probate court determined that the Trust did not address the situation in which the parties found themselves—both beneficiaries had died without any descendants and without ever having received distributions from the Trust. The result was that there were no beneficiaries to take from the Trust and fulfill the settlors' intent. The court determined that the Trust was ambiguous as to how to address this situation, which permitted the court to consider outside evidence along with the Trust's terms. The court looked to the 2015 deed to ascertain Betty's intent, and it determined that Betty had clearly intended for the Property to pass to a surviving beneficiary. Given that Barbara outlived Brett, she would have received his full share. Accordingly, the court concluded that Barbara's will controlled the Property's disposition. The

court ordered that the Trust be reformed to transfer the Property out of the Trust and into Barbara's estate.

This appeal followed.

## II. ANALYSIS

On appeal, appellant raises a number of issues relating to the Trust's terms, its ambiguity, the court's consideration of evidence outside the Trust's terms, and reformation of the trust. At its core, appellant's position is that the Property within the Trust should have been divided equally between himself and the settlors' two other surviving children instead of going solely to appellee through Barbara's will.

### A. STANDARD OF REVIEW

We review de novo the interpretation of a trust. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). When parties dispute the meaning of a trust, the court must identify and give effect to the settlors' intent, which is accomplished by looking at the trust's terms. *Id*. If unambiguous, the court must enforce the terms as written. *Id*. at 694. The court must look at the entire trust, "harmonizing its terms with the intent expressed, if possible." *Id*. However, if the trust's terms are ambiguous, the court is required to "look outside the document to determine the settlor's intent, and it may consider the circumstances surrounding the creation of the trust and the general rules of construction." *Id*. at 693. Disagreement among parties regarding a trust's meaning does not mean there is an ambiguity. *Id*. We review a probate court's dispositional rulings for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). An abuse of discretion occurs when the court "chooses an outcome outside the range of reasonable and principled outcomes." *Id*.

We also review de novo the interpretation of statutes. *McQueer v Perfect Fence Co*, 502 Mich 276, 285-286; 917 NW2d 584 (2018). "All matters of statutory interpretation begin with an examination of the language of the statute." *Id*. at 286. If a statute is unambiguous, it "must be applied as written." *Id*. (quotation marks and citation omitted). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). Further, statutory language "cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *Id*. (quotation marks and citation omitted). In other words, a statute must be read as a whole. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Finally, courts generally give undefined terms their plain and ordinary meanings. *Id*.

## B. DISCUSSION

Appellant first argues that the Trust became irrevocable upon the death of Charles Sr., thereby preventing Betty from amending the Trust or conveying the Property out of the Trust to Barbara and Brett. We disagree.

Trusts are governed by the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. As defined by MCL 700.7103(h), " 'Revocable', as applied to a trust, means revocable by the settlor without the consent of the trustee or a person holding an adverse interest." A settlor can amend a revocable trust "[b]y substantially complying with a method provided in the terms of the trust." MCL 700.7602(3)(a). A trust that is "created by an instrument which becomes operative during the settlor's lifetime" is known as an "inter vivos trust." *In re Messer Trust*, 457 Mich 371, 374 n 2; 579 NW2d 73 (1998) (quotation marks and citation omitted).

Here, the Trust was created as a "revocable Living Trust" and became operative during the settlors' lifetimes, thereby making this an inter vivos trust. Under a paragraph entitled, "Revocable Trust," the Trust provided:

> We reserve the right to amend or revoke this Agreement, wholly or partly, by a writing signed by us or on our behalf and delivered to Trustee during our life. However, we cannot change materially the duties or compensation of Trustee without its written approval.

Accordingly, the settlors explicitly reserved the right to amend the Trust during either of their lifetimes. The only limitation was that the duties or compensation of the trustee could not be changed without the trustee's written approval.

Appellant's reliance on the language in § VIII, ¶ c, of the Trust stating that "Trust B shall be irrevocable" is misplaced.[3] When one of the settlors died and the other settlor survived, the Trust's property was supposed to be reorganized into three trusts (Trust A, Trust B, and Trust C), apparently to reduce tax liability. Trust B was to receive property only if Trust A received property over a certain threshold for federal estate tax and state death tax purposes. There is no evidence that this reorganization occurred after the death of Charles Sr. or that there was enough property to even trigger Trust B. The primary asset of the Trust was the Property, and there was no evidence of any other property. Accordingly, appellant's assumption that Trust B even existed is speculative. Regardless, the irrevocability of Trust B was limited to retirement assets that the surviving settlor disclaimed in favor of Trust B. No such assets have been identified in this case; instead, this case involved real property. Accordingly, the irrevocability language is inapplicable because Trust B is not at issue.

---

[3] Appellant cites this language to § VIII, ¶ d, of the Trust, but the pertinent language appears in § VIII, ¶ c.

Next, appellant argues that the spendthrift clause prevented Betty from conveying the Property out of the Trust to Barbara or Brett. We disagree.

A spendthrift clause prevents certain creditors from reaching a beneficiary's interest by limiting the beneficiary's interest in trust property. *Miller v Dep't of Mental Health*, 432 Mich 426, 430; 442 NW2d 617 (1989). Such clauses restrict the beneficiary's ability to transfer her interest as a beneficiary to others. See *id*. at 430 & n 8. However, a spendthrift clause is invalidated "to the extent it is intended to apply to any interest of a beneficiary who is also the settlor of the trust." Restatement Trusts, 3d, § 58, comment *b*. Here, Betty was a settlor, so the clause could not be applied against her, contrary to appellant's argument.[4]

Appellant next argues that Barbara could not transfer her beneficiary interest in the Property to appellee via her will because of the power of appointment clause. We disagree.

Under the Powers of Appointment Act of 1967, MCL 556.111 *et seq*., a power of appointment is

> a power created or reserved by a person having property subject to his or her disposition that enables the donee of the power to designate, within any limits that may be prescribed, the transferees of the property or the shares or the interests in which it shall be received. [MCL 556.112(c).]

Under EPIC:

> If a governing instrument creating a power of appointment *expressly requires* that the power be exercised by a reference, an express reference, or a specific reference to the power or its source, it is presumed that the donor's intention, *in requiring that the donee exercise the power by making reference to the particular power or to the creating instrument, was to prevent an inadvertent exercise of the power*. [MCL 700.7206 (emphasis added).]

Here, the power of appointment was contained within § XIII, ¶ b, which provided that "*if the beneficiary dies before being entitled to distribution* of the remaining trust property, Trustee shall distribute the remaining trust property to . . . person or persons among our descendants . . . as the deceased beneficiary appoints by will which specifically refers to this power of appointment." (Emphasis added.) Accordingly, application of this power of appointment was expressly limited to a beneficiary dying *before* being entitled to distribution. Although there is no dispute that Barbara's will did not expressly make reference to the power of appointment in the Trust, it did not need to do so because she died *after* becoming entitled to distribution.

---

[4] To the extent that appellant contends as part of this argument that provisions pertinent to Trust B controlled, that argument is without merit because, again, nothing suggests that the at issue property was held in Trust B.

Appellant further argues that the Trust ran out of identifiable beneficiaries and that a resulting trust arose and should have governed distribution. While we agree that there remained no beneficiaries who could take under the Trust, we disagree that a resulting trust arose.

There were several provisions in the Trust dealing with the deaths of settlors and beneficiaries, but none of these addressed the situation before the probate court. As previously discussed, § XIII, ¶ b, applied only if a beneficiary died "before being entitled to distribution," and Barbara died after she was entitled to distribution. Section XIII, ¶ j, provided that if a beneficiary died prior to receiving their entire share, that beneficiary's share would be divided equally among the remaining primary beneficiaries. Here, Brett died prior to Barbara, which meant that his share transferred to Barbara and made her entitled to all remaining Trust property. However, the Trust was never properly administered, and Barbara never received the property to which she was entitled.

> Pursuant to § XXIII, ¶ *l*:
>
> [A]fter the division into shares, pursuant to the allocation and distribution directions set forth within this trust, if a Primary Beneficiary or the issue of a deceased Primary Beneficiary predeceases complete distribution of his or her share, and there is no other direction for allocation and distribution, then the undistributed balance of such share shall be allocated and distributed as hereinafter provided.

Any descendants of the beneficiaries were to receive their share after they attained the age of 25. Although Barbara and Brett both died before complete distribution of their shares and without other directions or guidance provided by the Trust, neither of them had any descendants, which made this provision inapplicable. Section XXIII, ¶ m, which appears to act as a sort of "catch-all" provision, applied only if "all the issue of the Grantor(s) are deceased and no other disposition of the property is directed in this Trust." This provision was inapplicable because there *were* issue still living, namely appellant, appellee, and Charles, Jr.

Accordingly, there were no Trust terms that either contemplated the unusual set of circumstances present in this case or otherwise provided guidance. No other beneficiaries could take under the Trust's terms.

Contrary to appellant's argument, however, a resulting trust was not the natural consequence of this situation. A resulting trust is a trust that

> arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is not otherwise effectively disposed of. Since the person who holds the property is not entitled to the beneficial interest, and since the beneficial interest is not otherwise disposed of, it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds it upon a resulting trust for him or his estate. [*Potter v Lindsay*, 337 Mich 404, 410; 60 NW2d 133 (1953) (quotation marks and citation omitted).]

-7-

This type of situation was not present here. Appellant makes no argument that there was any disposition of Trust property under circumstances raising an inference that the person taking the property should not have received the beneficial interest of that property.

Appellant next argues that the Trust was not ambiguous, which prevented the probate court from considering evidence outside the Trust's terms. We disagree.

The successor trustee concluded that the Trust was "confusing, contradictory and incomplete and therefore, in need of court guidance and/or reformation regarding its administration." She characterized it as "a hodgepodge of confusing, inconsistent or inapplicable provisions regarding trust asset distribution after the deaths of the named beneficiaries." The probate court agreed and concluded that the Trust's terms were ambiguous with respect to how to approach the scenario presented in this case. We discern no error in this conclusion. Having reviewed the Trust, we agree that it was confusing, incomplete, and sometimes contradictory. Moreover, for the reasons already discussed, we agree that it did not address the present situation in which the primary beneficiaries died without any issue and without receiving any distributions from the Trust. The settlors made clear their intention to distribute Trust property to Barbara, Brett, and Brett's and Barbara's descendants to the exclusion of the other children. Yet, under the Trust's terms, this could not occur.

We discern no error in the probate court's consideration and reliance on the 2015 deed along with the Trust's terms. In this deed, Betty attempted to convey the Property to Barbara and Brett with full rights of survivorship with a life estate reserved to Betty. This deed provided evidence of Betty's intent to follow the Trust's purpose of providing Trust property to Barbara and Brett to the exclusion of appellant and the other children. Moreover, by attempting to provide Barbara and Brett with rights of survivorship, Barbara as the surviving grantee would have received Brett's interest upon his death. See *Schaaf v Forbes*, 338 Mich App 1, 16-17; 979 NW2d 358 (2021) ("Upon the death of one joint tenant, the surviving tenant or tenants take the whole estate."). Once Barbara died, her interest in the Property would have passed via her own estate, which is what the probate court ordered should happen. Nothing about the 2015 deed contradicted the Trust's terms; in fact, it was in keeping with the settlors' overall desire to provide property to Barbara and Brett to the exclusion of the other children.

Finally, appellant argues that the probate court erred by reforming the Trust. We disagree.

"The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." MCL 700.7415. Here, there was no evidence or even argument offered to show that the settlors were affected by a mistake of fact or law, and the probate court made no findings on this. Accordingly, we agree with appellant that this statute is simply inapplicable.

MCL 700.7411(1) permits a court to terminate or modify a noncharitable, irrevocable trust under certain conditions:

> (a) By the court on the consent of the trustee and the qualified trust beneficiaries, if the court concludes that the modification or termination of the trust

is consistent with the material purposes of the trust or that continuance of the trust is not necessary to achieve any material purpose of the trust.

(b) On the consent of the qualified trust beneficiaries and a person or committee that is given the power under the terms of the trust to grant, veto, or withhold approval of termination or modification of the trust.

(c) By a trustee or other person or committee that is given a power by the terms of the trust to direct the termination or modification of the trust.

Here, at the time of the probate court proceedings, there were no trustees or beneficiaries to consent to any modification because they were deceased, thereby making this provision inapplicable.

Nonetheless, another method for terminating or modifying a trust exists under MCL 700.7412, which states:

(1) The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration.

(2) The court may modify the administrative or dispositive terms of a trust or terminate the trust if, *because of circumstances not anticipated by the settlor, modification or termination will further the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention*.

(3) If a trust is terminated under this section, the trustee shall distribute the trust property as ordered by the court.

(4) Notice of any proceeding to terminate or modify a trust shall be given in the manner described in section 7411(3).  [Emphasis added.]

Here, MCL 700.7412 was applicable.  As previously discussed, the Trust explicitly provided for Barbara and Brett to receive property to the exclusion of the other three children.  The clear purpose was to provide Barbara and Brett with Trust property, and the 2015 deed provided further evidence of this purpose.  However, because the Trust was never properly administered, neither Barbara nor Brett ever received distributions from the Trust, and they died without any descendants.  This was a situation not addressed by the Trust or anticipated by the settlors.  By modifying the Trust to allow for distribution of the Property to Barbara's estate, the probate court was furthering the Trust's purpose of providing property to the primary beneficiaries in the manner that most closely followed the original Trust's terms.  By outliving Brett, Barbara received his share, thereby entitling her to the entirety of the Trust's property.  Accordingly, she would have received the Property via the Trust's terms, and her decision to devise this to appellee was her prerogative.  Nothing in the Trust prevented beneficiaries from disposing of Trust property after receiving it.  Additionally, notice was not required pursuant to MCL 700.7411(3), as there were no settlors or trustees because all were deceased, and there was no indication of a "trust director" or any other "powerholder described in subsection (1)(b) or (c) . . . ."  MCL 700.7411(3).  There was also no other person listed in the Trust who was to receive notice of a modification proceeding.

Appellant's argument that the court's actions rendered large portions of the Trust meaningless is essentially a reiteration of his prior arguments, which are without merit.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello