**In the Matter of Robert L. PAGE, Debtor.**

**Denny and Patricia Strong, Plaintiffs,**

v.

**Robert L. Page, Individually and as Trustee of the E. Alfreda Page Trust, and Maxine Page, Defendants.**

Bankruptcy No. HT98–02756.
Adversary No. 99–88271.

United States Bankruptcy Court,
W.D. Michigan.

Sept. 30, 1999.

Jeffrey R. Hughes, Grand Rapids, Michigan, for Denny and Patricia Strong.

Wallace H. Tuttle, Traverse City, Michigan, for Robert L. Page.

## OPINION REGARDING WHETHER DEBTOR'S INTEREST IN TRUST IS PROPERTY OF THE BANKRUPTCY ESTATE

JAMES D. GREGG, Chief Judge.

### I. ISSUE

The issue to be decided is whether the Debtor's interest in a certain trust created under Michigan law is included in property of the bankruptcy estate notwithstanding 11 U.S.C. § 541(c)(2).

### II. JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a) and Local Rule 83.2(a) of the United States District Court for the Western District of Michigan, the action has been referred to this bankruptcy court. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E) because it pertains to administration of the estate and the determination of the property of the estate.

### III. PROCEDURAL BACKGROUND

On March 30, 1998, Robert L. Page ("Debtor") filed a voluntary petition under chapter 13 of the Bankruptcy Code.[1] On May 12, 1999, the case was converted to a chapter 11 case.

---

**1.** The Bankruptcy Code is contained in 11 U.S.C. §§ 101–1330. Unless stated otherwise, all future statutory references are to the Bankruptcy Code, e.g., " § ____."

■ Denny and Patricia Strong ("Plaintiffs" or "Strongs") filed this adversary proceeding against the Debtor and Maxine Page, the Debtor's spouse, on July 12, 1999. In Count I of their complaint,[2] the Plaintiffs seek a declaratory judgment that the Debtor's interest in the E. Alfreda Page Trust ("Trust") is property of this bankruptcy estate.[3]

The Strongs assert two bases for their requested relief. First, they state the express terms of the Trust require that the Debtor's interest in it be immediately disbursed to the Debtor. The Plaintiffs assert because the Debtor is the trustee and sole beneficiary, this merger destroys the Trust. Second, even if merger is inapplicable, the Strongs assert the spendthrift provisions of the Trust have been rendered void and unenforceable. The Strongs buttress their argument by the fact the Debtor has regularly exercised control over the Trust funds for his own benefit.

On August 2, 1999, the Strongs filed a motion for summary judgment regarding Count I of the complaint. A hearing was held on September 2, 1999. The Debtor and the Strongs have each filed a legal memorandum that has been considered by the court.

### IV. FACTS

The business relations between the Debtor and the Strongs began in mid–1980 when the parties, through two corporate entities, owned and managed two miniature golf courses in Dayton, Ohio. In August, 1992, the parties decided the Debtor would purchase Mrs. Strong's stock interest in the two corporations: Adventure Golf–Ohio and Adventure Golf–Michigan. As part of the transaction, the Debtor executed and gave two promissory notes to Mrs. Strong. The first note, dated August 31, 1992, is in the principal amount of $279,666.00. Exhibit E (hereinafter "Exh. ___"). The second note, dated January 1, 1993, is in the principal amount of $19,-655.42. Exh. F.

The Debtor paid very few installments on the two notes. As of the bankruptcy petition date, March 30, 1998, per their Proof of Claim, the Strongs assert the Debtor owes them $2,793,481.17.[4]

In 1995, the Debtor filed a complaint against the Strongs in the Common Pleas Court of Montgomery County, Ohio, Civil Division, Case No. 95–3658 (the "state court action"). The Debtor sought a declaratory judgment that the notes were void and rescinded because of alleged conversion and fraudulent acts of the Strongs. The Strongs counterclaimed for the amount owing on the two notes and also alleged a claim against the Debtor for abuse of process.

The Debtor's subsequent bankruptcy filing stayed the continuation of the state court action. On June 4, 1998, this bankruptcy court entered its Order Granting Relief From Stay. In that order, the parties were permitted to try the state court action to conclusion. However, no state

---

2. Counts II and III of the Plaintiffs' complaint pertain to requested injunctive relief regarding alleged fraudulent conveyances made by the Debtor. Those counts are not now before the court.

3. The Strongs, as creditors and parties in interest, have standing to seek a determination whether an asset, i.e., the Debtor's interest in a trust, is property of the estate or not. *In re Benton*, 237 B.R. 353, 355 n. 1 (Bankr. E.D.Mich.1999).

4. It is asserted that the Strongs' secured claim is $19,662.43, which is the amount placed in escrow by the Debtor pending the outcome of state court litigation in Ohio. The balance of the claim is unsecured. The asserted claim far surpasses the unpaid principal and accrued interest because the Strongs assert that they are entitled to "service charges" on each of the notes. For example, the monthly service charges on the larger note range from $1,500 to $19,500 per month. As of August 15, 1999, the unpaid principal and accrued interest balance on the larger note is asserted to be $410,659.87. The aggregate service charges are asserted to be $747,000. Exh. G.

court judgment would be enforced absent further permission from this court.[5]

Many years prior, on May 21, 1980, the Debtor's mother, E. Alfreda Page, ("Alfreda"), established the *inter vivos* Trust for the benefit of the Debtor and his two minor children. The 1980 trust was modified and superseded by the "E. Alfreda Page Trust Agreement Dated May 21, 1980, as Amended and Restated on August 6, 1987."[6] *See* Exh. E which is attached to the motion for summary judgment (herein "Trust Agreement"). Alfreda served as the trustee of the Trust until her death in September, 1994.[7]

The Trust contains a number of provisions which are relevant to the issue before the court. The Trust "constitute[s] the sole instrument governing said trust" and any amendments to the Trust "shall be in accordance with paragraph *EIGHTH*" in the Trust. Trust Agreement at 1.1. After the death of the grantor, i.e., Alfreda, the trust corpus was to be divided as "soon as practicable" into three separate shares, with twenty-five percent to be held in trust for grandson Mark A. Page, twenty-five percent to be held in trust for granddaughter Holly A. Page, and fifty percent to be held in trust for Alfreda's son, the Debtor. (The Debtor's separate trust is sometimes referred to as the "Debtor's Trust".) Trust Agreement,

¶ *SECOND* at 2. During the hearing, both the Debtor's attorney and the Strongs' attorney agreed that after Alfreda's death, three separate trusts were formed.[8]

With regard to the Debtor's Trust, it is provided that the "net income from the trust shall be paid to the [Debtor] annually or at more frequent intervals for and during the term of [the Trust]." Trust Agreement, ¶ *SECOND* at 2.2. It is also required that as "soon as practicable, the Trustee shall distribute the then remaining trust corpus, as then constituted, to the [Debtor], free and discharged from the trust hereof." *Id.* The Trust also contains a spendthrift provision.[9] The power to alter or revoke the Trust is reserved to the grantor and any modification must be in writing. Trust Agreement, ¶ *EIGHTH* at 6. Lastly, the Trust, including the Debtor's Trust at issue, "shall be construed in accordance with the laws of the State of Michigan." Trust Agreement, ¶ *TENTH* at 6.

Pursuant to the Trust, the Debtor became the trustee upon Alfreda's death. The Debtor testified at a Rule 2004 examination that it was his *understanding* of Alfreda's directions that he was to treat his interest in the Trust to preserve the principal for distribution to his children, i.e., Alfreda's grandson and granddaughter, upon the Debtor's death.

5. Although the Debtor has not objected to Strongs' Proof of Claim, this is understandable inasmuch as the proper amount of the Strongs' claim, if any, will be determined in the state court action.

6. This Trust was prepared by an attorney, Neil Zales, of Southfield, Michigan.

7. Upon Alfreda's death, the *inter vivos* trust became three separate testamentary trusts.

8. It should be noted that the Debtor, in accordance with the Trust, is the trustee for all three trusts. The Strongs do not claim that the Debtor's children's trusts are property of the bankruptcy estate and they are not involved in this adversary proceeding.

9. "Neither the corpus of the trusts administered hereunder nor the income resulting therefrom while in the hands of the Trustee shall be subject to any conveyance, transfer, or assignment, or be pledged as security for any debt of any beneficiary thereof other than the Grantor [Alfreda] and the same shall not be subject to any claim of any creditor of any such beneficiary, through legal process or otherwise. Any such attempted sale, anticipation, assignment or pledge [of] any of the funds or property held in any such trust, or the income therefrom, by such beneficiaries or any of them other than the Grantor [Alfreda] shall be null and void, and shall not be recognized by the Trustee. It is the Grantor's [Alfreda's] intention to place the absolute title to the property held in trust and the income therefrom in the Trustee with power and authority to pay out the same only as authorized herein." Trust Agreement, ¶ *FIFTH* at 4–5.

When Alfreda died, the Trust totaled approximately $1,000,000.00. In April or May of 1995, as required by the Trust, the Debtor divided the corpus of the Trust into the requisite three shares and he received fifty percent of the Trust funds. His share was approximately $500,000. Transcript of Debtor's Rule 2004 Exam, June 15, 1999 at 105, referred to herein as the "R 2004 Exam." When the Debtor filed his schedules, his Trust was valued at approximately $488,000. R 2004 Exam at 106. The current value of the Debtor's interest in the Trust is approximately $426,000. *Id.*

During prior testimony,[10] the Debtor testified that he spent portions of the principal of his Trust to pay approximately $38,000 in attorneys' fees to Ohio litigation counsel and $39,000 to the chapter 13 trustee before the case was converted to chapter 11, to pay various taxes. Prelim.Inj.Hrg. at 106–07. Additionally, the Debtor previously testified that he had access to the Trust principal and had considered it as a source of funds to settle the Ohio litigation with the Strongs. Prelim.Inj.Hrg. at 108–10. The Debtor acknowledges he withdraws $2,500 each month from the Trust for a portion of his living expenses. *See* Debtor's Schedule I, "Current Income of Individual Debtor".

## V. DISCUSSION

### A. *Summary Judgment Standards.*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.BANKR.P. 7056 (incorporating FED. R.CIV.P. 56); *McCafferty v. McCafferty (In re McCafferty),* 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party

opposing the motion. *In re McCafferty,* 96 F.3d at 195 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The court must review the evidence for genuine issues of material fact and "evaluate [a] party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991). "[S]ome metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

The Strongs, as movants, bear the initial responsibility of informing the court of the basis of the motion and identifying those portions of the record which demonstrate the absence of material issues of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the Strongs meet their initial burden, the nonmoving Debtor is obligated to come forward with specific facts showing there is a genuine issue of material fact. FED. R.CIV.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If, after adequate discovery, the Strongs establish uncontested facts and show they are entitled to relief, summary judgment is appropriate.

### B. *Inadmissibility of Parol Evidence.*

Under Michigan law, every trust "shall be liberally construed by the court so that the intentions of the creator thereof shall be carried out whenever possible." Mich.Comp. Laws Ann. § 554.352. *See also, Miller v. Dept. of Mental Health,* 432 Mich. 426, 434, 442 N.W.2d 617 (1989) (stating that in construing a trust instrument, the intention of the settlor is paramount). In this adversary proceeding, the intent of Alfreda in establishing the Trust

---

**10.** The Debtor's prior testimony was received during a preliminary injunction hearing in this adversary proceeding which took place on July 21, 1999 (referred to herein as the "Prelim.Inj.Hrg. at ___"). In accordance with FED R.BANK.P. 7065, which incorporates FED.R.CIV.P. 65(a)(2), such testimony is part of the record before the court.

is controlling. The court must examine the written Trust to construe her intent.

The Debtor asserts that, since 1995, he has administered the Debtor's Trust in accordance with his *understanding* of the terms of the Debtor's Trust and Alfreda's intent. The Debtor's oblique understanding of Alfreda's desires is based upon a single conversation he had with her after the execution of the restated Trust some time between 1987 and 1994, when she died. The Debtor stated he had the impression that his Trust was to be managed in a fashion similar to that of his father's trust wherein the corpus would eventually pass to the Debtor's two children.[11]

 The Debtor's "impression" of Alfreda's intent directly conflicts with the unambiguous language in the Trust. Although Alfreda specifically reserved the power to alter or revoke the Trust, such power could only be exercised "by an instrument in writing." Trust Agreement, ¶ *EIGHTH* at 6. No such writing has been brought before this court. Implicitly, the Debtor seeks to defeat the Trust language by his parol evidence.

> In the interpretation of the words and other conduct of the settlor, circumstances throwing light upon the settlor's intention are relevant, and evidence of such circumstances is admissible except when excluded by the parol evidence rule, by the Statute of Frauds or the Statute of Wills, or by some other rule of law.

RESTATEMENT (SECOND) TRUSTS, § 24, Comment, at 67 (quoted approvingly in *Miller*, 432 Mich. at 433 n. 17, 442 N.W.2d 617).

> Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by him as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to contradict or vary it. On the other hand, if the meaning of the writing is uncertain or ambiguous, evidence of the circumstances is admissible to determine its interpretation.

1 SCOTT, TRUSTS, § 38, at 301 (quoted approvingly in *Miller*, 432 Mich. at 433 n. 17, 442 N.W.2d 617).[12]

 This court finds no ambiguity or uncertainty in the written Trust. Alfreda succeeded in clearly manifesting her intentions in writing. There is no allegation or any evidence of fraud, duress, mistake, or any other ground for reformation or rescission. Therefore, parol evidence of Alfreda's intent regarding the administration of the Debtor's Trust is inadmissible. The Debtor's attempt to contradict the writing is unavailing.[13]

C. *Validity Of Trust And Enforceability Of Spendthrift Provision.*

1. *Property of Estate is Generally Determined by State Law.*

 Property of a bankruptcy estate is extensive and generally includes "all

---

**11.** The Debtor's father's trust is in a separate document which is not at issue in this litigation.

**12.** In the similar situation where a will is involved, "[p]arol evidence cannot be resorted to add to, vary, or contradict the language of a written instrument, unambiguous on its face; particularly a will." *Gardner v. City Nat'l Bank & Trust Co.*, 267 Mich. 270, 279, 255 N.W. 587 (1934). "In the construction of wills, the cardinal canon, the guiding polar star, is that the intent of the testator must govern; and when that intent is found from the four corners of the instrument the duty

rests upon the court to effectuate it if it may lawfully be done." *In re Churchill's Estate*, 230 Mich. 148, 155, 203 N.W. 118 (1925). This court believes the preceding statements by the Michigan Supreme Court about wills are equally applicable in this context, which involves a testamentary trust. In each instance, the deceased person is not available to testify about intent.

**13.** Even if the court considered the Debtor's testimony regarding Alfreda's intent, at best it would engender a "metaphysical doubt" insufficient to raise a material fact. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). To determine whether the Debtor's interest in the Trust is property of the estate, state law must be examined. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); *accord Demczyk v. Mutual Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823, 827 (6th Cir.1997) ("look to property rights defined under state law"; issue involved a letter of credit); *XL/Datacomp. Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1450 (6th Cir. 1994) (same; issue involved a constructive trust); *see Selby v. Ford Motor Co.*, 590 F.2d 642, 645 (6th Cir.1979) (in a case involving a statutory trust, "look to the language and purpose of the Bankruptcy Act in relationship to property rights created under state law"). To determine what constitutes property of the estate under § 541(a), Michigan law applies.[14]

When a debtor holds a beneficial interest in a trust that contains a valid spendthrift provision which is enforceable under applicable nonbankruptcy law, the debtor's interest is excluded from the bankruptcy estate. 11 U.S.C. § 541(c)(2). Although a debtor's interest is often determined by state law, the interest may also be determined by other law, such as ERISA. *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).[15] In this adversary proceeding, whether the Debtor's beneficial interest in the Debtor's Trust is excluded from property of the estate under § 541(c)(2) must be determined by Michigan law.

Where the relevant state law is unsettled, a federal court must determine how the highest state court would rule if faced with the same case. *Graham Square*, 126 F.3d at 827 (citing *Commissioner v. Bosch's Estate*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967)). If "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data.'" *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 901 (Bankr. W.D.Mich.1996) (quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (citations omitted)). The term "relevant data" includes the state appellate decisions, which shall be given deference, and "Supreme Court dicta, *restatements of law*, law review commentaries, and the majority rule among the states." *Id.* (emphasis added). Somewhat surprisingly, Michigan law is unsettled regarding the issues to be decided.

### 2. Effect of Merger of Legal and Beneficial Interests upon the Debtor's Trust.

No Michigan reported decisions have been cited by the parties or independently found by the court directly on point with the facts presented. This court must examine the relevant data to seek to ascertain what the Michigan Supreme Court would decide when faced with this issue.

In a traditional trust, the trustee holds legal title to the corpus and the beneficiaries hold the equitable interest. *See Equitable Trust Co. v. Milton Realty Co.*, 261 Mich. 571, 577, 246 N.W. 500 (1933) (to create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others; there must be a separation of the legal

---

14. The Trust was executed in Michigan and states it "shall be construed in accordance with the laws of the State of Michigan." Trust Agreement, ¶ *EIGHTH* at 6.

15. The Supreme Court held that applicable nonbankruptcy law included more than state law and encompassed the statutory spendthrift provisions of ERISA-qualified pension plans per the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1056(d)(1) ("[e]ach pension plan shall provide that the benefits provided under the plan may not be assigned or alienated"); *Patterson*, 504 U.S. at 759, 112 S.Ct. at 2247.

estate from the beneficial enjoyment). *See also* Mich.Comp.Laws Ann. § 555.16 (valid express trust shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust; the beneficiary shall take no estate or interest in the lands, but may enforce the performance of the trust in equity). However, when the same person holds both the legal title and the equitable interest, the trust terminates, as a matter of law. This result is known as merger.

■■■■■ The RESTATEMENT (SECOND) TRUSTS describes the merger doctrine: "Except as stated in Subsection (2)[16], if the legal title of the trust property and the entire beneficial interest become united in one person who is not under an incapacity, the trust terminates." RESTATEMENT (SECOND) TRUSTS, § 341(1) (1959). "If by operation of law the legal title to the trust property passes to the beneficiary who has the entire beneficial interest, the trust terminates and the beneficiary holds the property free of trust." *Id.* at Comment b. "The sole beneficiary of a trust cannot be the sole trustee of the trust." *Id.* § 99(5).[17]

In this adversary proceeding, the Trust termination occurred after Alfreda's death when the Trust was divided into three separate trusts, including the fifty percent share that became the Debtor's Trust. When the legal title passed to the Debtor, coupled with his sole beneficiary status, the Debtor's Trust dissolved. Moreover, notwithstanding the merger by operation of law itself, Alfreda intended the Debtor's Trust to terminate because the Debtor, as Trustee, was required to "distribute the then-remaining trust corpus, as then constituted, to the [Debtor] free and discharged from the trust hereof." Trust Agreement, ¶ *SECOND* at 2.2.

Other states have adopted the doctrine of merger.[18] In prior opinions, the Michigan Supreme Court has cited approvingly the authority of the RESTATEMENT (SECOND) TRUSTS. *See, e.g., Miller v. Dept. of Mental Health,* 432 Mich. 426, 442 N.W.2d 617 (1989). The Michigan Supreme Court has acknowledged the doctrine of merger of legal and equitable estates in real property. *Sagendorph v. Lutz,* 286 Mich. 103, 281 N.W. 553 (1938).

■■■■ Based upon all available relevant data, this court believes that the Michigan

16. Subsection (2) is inapplicable based upon the uncontested facts. When a beneficiary has the entire beneficial interest in the trust property (as the Debtor did) and becomes, without his consent, the sole trustee (as the Debtor did when Alfreda died), he can procure the appointment of a new trustee and have the trust reconstituted (which the Debtor did *not* do). RESTATEMENT (SECOND) TRUSTS, § 341(2) (1959). The nonconsensual trustee-sole beneficiary may promptly reconstitute the trust by appointing a new trustee thereby extending the original trust and maintaining the effectiveness of the original spendthrift provision. However, if the trustee-beneficiary fails to take prompt action to appoint a new trustee, "his creditors can reach the property and apply it to the satisfaction of their claims." *Id.* at Comment c. It is now too late for the Debtor to undo the effect of merger, reconstitute the Trust, and be protected from his creditors by the spendthrift language in the Trust. Alfreda died five years ago, in 1994. Any possible action now attempted by the Debtor would not be "prompt."

17. "Where one person has both the legal title to property and the entire beneficial interest, he holds it free of trust. There is no separation of the legal and beneficial interests, and there are no duties running from himself to himself, and no rights against himself. He is in a position where he can dispose of the property as freely as any owner can do, since there is no one who can maintain a proceeding against him to prevent him from so doing, and if he transfers the property there is no one who can make him accountable for the proceeds or can reach the property in the hands of the transferee." *Id.* § 99, Comment e.

18. *See, e.g., Ammco Ornamental Iron, Inc. v. Wing,* 26 Cal.App.4th 409, 31 Cal.Rptr.2d 564 (1994); *Axtell v. Coons,* 82 Fla. 158, 89 So. 419 (1921); *In re Phipps' Will,* 2 N.Y.2d 105, 157 N.Y.S.2d 14, 138 N.E.2d 341 (1956); *In re Fox's Estate,* 264 Pa. 478, 107 A. 863 (1919); *Horlick v. Sidley,* 241 Wis. 81, 3 N.W.2d 710 (1942).

Supreme Court, when presented with the issue, would hold that a merger of the legal title and beneficial interest to personal property takes place when the same person is the sole trustee and the sole beneficiary of a trust, thereby terminating the trust and rendering its provisions invalid. Therefore, this court holds that the Debtor's Trust was terminated, by the doctrine of merger, when he became the sole trustee and sole beneficiary. The corpus of the Debtor's Trust is property of the estate under § 541(a).

### 3. The Extinguishment of the Spendthrift Provision in the Debtor's Trust.

■ Assuming the Michigan Supreme Court would not apply the doctrine of merger to personal property held in trust, the court must address the issue of the spendthrift provision contained in the Trust under § 541(c)(2). "A spendthrift trust is: 'one created to provide a fund for the maintenance of the beneficiary at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts.'" *In re Benton,* 237 B.R. 353, 357–58 (Bankr.E.D.Mich. 1999) (quoting *Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 548, 213 N.W.2d 172 (1973)). The Trust contained a spendthrift provision, which was enforceable under Michigan law, prior to Alfreda's death. *See supra,* p. 760, n. 9.

However, upon Alfreda's death, the Trust corpus was divided and the Debtor's Trust was created. See p. 5, n. 6, *supra.* The Debtor's Trust required the remaining corpus to be distributed "as soon as practicable" to the Debtor "free and discharged of the trust hereof." Trust Agreement, ¶ SECOND at 2.2.

■ "If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid." RESTATEMENT (SECOND) TRUSTS, § 153(2). If the beneficiary may call for the principal, e.g., take it as needed, the restraint on alienation is invalid. *Id.,* Comment c. Since the time the Trust was separated into three subsequent trusts in 1995, the Debtor has been entitled to the Debtor's Trust principal. He was entitled to take the entire principal on the bankruptcy filing date in 1998. He has spent the principal, after the bankruptcy, as he has seen fit. *See supra,* pp. 760–61.

Assuming arguendo that merger did not invalidate the Debtor's Trust, as an alternative holding, this court holds that the spendthrift provision in the Debtor's Trust is extinguished and unenforceable. Therefore, the exclusion from property of the estate under § 541(c)(2) is inapplicable. The property in the Debtor's Trust is property of the bankruptcy estate. 11 U.S.C. § 541(a).

### D. Should This Court Enter A Final Judgment Regarding Count I?

■ Only Count I of the Strongs' multi-count complaint is before the court on this motion for summary judgment. Although the court has determined to grant summary judgment on this count, this resolution would nevertheless be regarded as interlocutory under FED.R.CIV.P. 54(a), made applicable herein by FED. R.BANKR.P. 7054, given the pendency of the remaining counts. In exceptional circumstances, however, the court has discretion to direct the entry of a final judgment as to fewer than all of the claims in a multi-claim or multi-party case, provided that there is "no just reason for delay." *See* FED.R.CIV.P. 54(b); *cf. Millers Cove Energy Co. v. Moore (In re Millers Cove Energy Co.),* 128 F.3d 449 (6th Cir.1997) (noting that FED.R.CIV.P. 54(b) applies in adversary proceedings, but dismissing appeal from district court order given the absence of certification under that rule);

*General Acquisition, Inc. v. GenCorp. Inc.*, 23 F.3d 1022 (6th Cir.1994) (general standards for certification under FED.R.CIV.P. 54(b)). The inquiry necessarily implicates notions of finality [19] as well as the historic aversion to piecemeal appeals in the federal courts.

■ Having considered the Sixth Circuit's *General Acquisition, Inc.* case and other authority, the court finds, without reservation, that Count I (pertaining to the ownership of the Debtor's Trust) is separable from the counts related to the allegedly fraudulent conveyance of the Debtor's stock and real estate interests. These various counts present different questions of fact and law, and arise out of a different "aggregate of operative facts." *See General Acquisition, Inc.*, 23 F.3d at 1028. For example, the intention of the Debtor's mother, as expressed in 1987, and the Debtor's control over the trust corpus following his mother's death, have no bearing on the transfers of the stock and realty. Although each of the counts of the complaint seeks to augment or secure the "property of the estate," Count I takes aim at a transaction distinct and separate from the remaining counts. Even assuming that the facts giving rise to each count may suggest the Debtor's consistent effort to defeat the interests of his creditors, the unity of the Debtor's purpose, even if established, does not transform discrete transactions into a single aggregate of operative facts under FED.R.CIV.P. 54(b). Count I clearly stands alone.

■ Not only is Count I sufficiently separate and finally resolved by granting the Strongs' motion for summary judgment, there is absolutely no just reason for delaying the entry of a final judgment— and the appellate review that will inevita-

bly follow. *See Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir.1986) (enumerating non-exhaustive list of factors to consider when making certification under FED. R.CIV.P. 54(b)). As noted above, Count I and the remaining claims are distinct. There is no likelihood that future developments in the adversary proceeding will render the judgment moot. Certification under the rule will not oblige the district court to review the Trust issue a second time. Nor is the judgment (essentially declaratory in nature) subject to setoff or counterclaim. Equally important in the context of the base case, immediate entry of a final judgment declaring that the trust corpus is "property of the estate" will prohibit the Debtor from further dissipating the corpus for his personal use, and will permit the recently appointed chapter 11 trustee to otherwise preserve the property.[20] Moreover, the chapter 11 trustee will be able to put the trust corpus immediately to work for the benefit of the Debtor's creditors, whether as seed money for avoidance litigation or to pay administrative and other claims pursuant to a possible future chapter 11 plan. In addition, immediate resolution of the trust issue— by bringing certainty with respect to the size of the estate—will facilitate the formation of a plan of reorganization which, in the court's view, has been delayed too long already. Also, by bringing certainty to the issue, a final judgment will likely facilitate resolution of a variety of present and imminent disputes related to the base case. Accordingly, because the court finds that there is no just reason for delaying the entry of a final judgment, judgment against the Debtor on Count I shall enter forthwith. *See Eisen v. Frangos (In re*

19. *See LTV Steel Co. v. United Mine Workers (In re Chateaugay Corp.)*, 922 F.2d 86, 90 (2d Cir.1990) (the finality determination required by FED.R.CIV.P. 54(b) "must be made in the context of the less rigid finality requirements of section 158(d), rather than section 1291, because section 158(d) is the relevant standard of finality in bankruptcy adversary proceedings"), *cert. denied*, 502 U.S. 1093, 112 S.Ct. 1167, 117 L.Ed.2d 413 (1992).

20. Per order dated September 16, 1999, a chapter 11 trustee was appointed in this case. He is responsible to exercise statutory duties on behalf of the estate. 11 U.S.C. § 1106(a).

*Frangos)*, 132 B.R. 723 (Bankr.N.D.Ohio 1991) (with respect to multi-count complaint, court grants summary judgment holding that debtor's interest in trust became property of the estate notwithstanding spendthrift provisions, and certifying partial judgment as final under FED. R.CIV.P. 54(b)).

## VI. CONCLUSION

There exist no material contested facts and summary judgment is therefore appropriate. The property in the Debtor's Trust is included in the bankruptcy estate because (1) the Debtor's Trust is invalid and terminated based upon the doctrine of merger and (2) the spendthrift provision in the Trust is unenforceable because the Debtor has the absolute right to, and control over, the principal in the Trust. Lastly, there is no reason to delay entry of a final judgment as to Count I of the Plaintiff's complaint. A separate order shall be entered accordingly.