*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* WESSELS FAMILY TRUST.

---

LORENE WESSELS, Individually and as Trustee of
the SCOTT AND LORENE WESSELS TRUST,

          Petitioner-Appellant,

v

LYNN MOLTER, Successor Trustee of the
WESSELS FAMILY TRUST,

          Respondent-Appellee.

UNPUBLISHED
October 24, 2025
2:31 PM

No. 373990
Huron Probate Court
LC No. 24-043275-TV

---

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Petitioner-Appellant, Lorene Wessels, individually and as trustee of the Scott and Lorene Wessels Trust, appeals as of right the probate court's December 19, 2024 Opinion and Order directing the final distribution of trust assets from the Wessels Family Trust ("Wessels Trust"). On appeal, appellant argues the final distribution as directed by the probate court did not comport with the language of the Wessels Trust. Appellant contends that there were disputed questions of fact regarding the settlor's intent that needed to be resolved before the probate court ordered the final distribution of trust assets. We agree that there are disputed questions of fact that must be resolved by the fact-finder before directing the final distribution of the Wessels Trust. Therefore, we vacate the probate court's opinion and order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal stems from appellant's objection to the successor trustee's proposed final distribution of the Wessels Trust following the death of its settlors. The Wessels Trust was executed on July 22, 2002, by George R. Wessels and Carol L. Wessels, who were a married couple. The couple named themselves as both the primary beneficiaries and primary trustees of

the Wessels Trust. As primary beneficiaries of the Wessels Trust, George R. and Carol had the exclusive right to disbursements during their lifetimes.

Upon the death of both settlors, the Wessels Trust instructed the successor trustee to make a final distribution of trust assets in accordance with Article Two of the Wessels Trust. In the original trust instrument, the settlors' four living children were identified as George T. Wessels, Scott J. Wessels, David C. Wessels, and Lynn Molter. The trustee was instructed to divide the remaining trust assets into separate trusts, equal in value, for each living child, and for the then-living descendants of each deceased child by right of representation. The trust assets set aside for each living child were to be distributed free from trust.

After her husband's death, Carol amended the Wessels Trust twice. She first amended the Wessels Trust in a signed and dated instrument on May 21, 2007 ("the First Amendment"). In the First Amendment, the settlor revoked § 2.4 of the Wessels Trust and replaced it with a provision stating that the settlor may leave a Schedule of Prior Distributions to identify gifts or loans that she made for one or more of her beneficiaries during her lifetime that must be accounted for in that beneficiary's share of the final distribution. The settlor also revoked and replaced § 2.5, which directed the final distribution of trust assets. The amended § 2.5 restated the final distribution plan. It also stated that the trustee will value a 75-acre parcel known as the Klug-Lincoln Parcel at $137,200 and credit the parcel to Scott Wessels's share.

The settlor amended the Wessels Trust for a second and final time in a signed and dated instrument on October 29, 2010 ("the Second Amendment"). In the Second Amendment, the settlor amended § 2.5 to change the final distribution plan to leave a ¼ share of remaining trust assets to Scott J. Wessels and Lynn Molter. George T. Wessels, David C. Wessels, and four named grandchildren were to each receive a 1/12 share of remaining trust assets. The Second Amendment made no mention of the Klug-Lincoln Parcel.

Following Carol's death, Molter became successor trustee. As successor trustee, she relied on a purported Schedule of Prior Distributions listing a distribution of $100,000 to George T. Wessels and a distribution of $10,000 to Scott Wessels to draft a proposed final distribution of trust assets. In the proposed final distribution, the trustee credited only a $50,000 prior distribution against George T. Wessels's share out of concern that a $100,000 credit would leave a shortfall in trust assets. She credited $137,200 for the Klug-Lincoln Parcel and $10,000 for a prior distribution against Scott Wessels's share.

Appellant objected to the trustee's proposed distribution plan, asserting that it did not comport with the language of the trust amendments. According to appellant, the distribution plan should account for the full $100,000 prior distribution for George T. Wessels as stated in the Schedule of Prior Distributions. Additionally, appellant argued that the value of the Klug-Lincoln Parcel should not be attributed to the Scott Wessels Trust because the settlor revoked that credit in the Second Amendment. Appellant offered her own proposed distribution plan that accounted for the $100,000 and $10,000 prior distributions, but left out any accounting for the Klug-Lincoln Parcel. Beneficiary George T. Wessels objected to both proposed distribution plans on the basis

that he was not presented with any documentation or evidence regarding the validity of the prior distributions.[1]

The probate court took jurisdiction over the Wessels Trust and entered an ex parte order protecting its assets. Thereafter, the probate court directed the parties to submit memorandums of law regarding the issues before the court. After the parties filed their memorandums, the probate court held a status conference and declared that it would make findings of fact regarding the final distribution at that status conference. Appellant objected and orally moved for the probate court to hold an evidentiary hearing on the basis that there were disputed issues of fact that must be resolved to effectuate the settlor's intent in the final distribution. The probate court denied appellant's motion and issued an Opinion and Order directing the final distribution of the Wessels Trust. This appeal followed.

## II. STANDARD OF REVIEW AND GOVERNING PRINCIPLES

This Court reviews a probate court's factual findings for clear error, but reviews its dispositional rulings for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). A court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Id*. A finding is clearly erroneous when this Court is left with a definite and firm conviction that the probate court made a mistake. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A trial court's decision not to conduct an evidentiary hearing is also reviewed for an abuse of discretion. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002).

Resolution of the issues on appeal involves the interpretation of a trust instrument, which presents a question of law that this Court reviews de novo. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). To resolve a dispute concerning the meaning of a trust, a court's objective is to ascertain and give effect to the intent of the settlor. *In re Kostin*, 278 Mich App 47, 57; 748 NW2d 583 (2008). The same general rules that apply to judicial review of a will apply to judicial review of trust documents. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). "Absent ambiguity, the words of the trust document itself are the most indicative of the meaning and operation of the trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012). However, if an ambiguity in the trust exists, the probate court "must look outside the document to determine the settlor's intent, and it may consider the circumstances surrounding the creation of the trust and the general rules of construction." *Bill & Dena Brown Trust*, 312 Mich App at 693.

An ambiguity can be either patent or latent. *In re Woodworth Trust*, 196 Mich App 326, 327-328; 492 NW2d 818 (1992). "A patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." *Id*. "A latent ambiguity exists where the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning." *Id*. at 328.

---

[1] George T. Wessels has not made an appearance in this appeal.

III. ANALYSIS

In this case, the probate court was tasked with determining whether the trustee's proposed final distribution conformed with the terms of the Wessels Trust. The issues before the probate court were the enforceability of the $100,000 and $10,000 prior distributions listed in the purported Schedule, whether the trustee was authorized to reduce the $100,000 prior distribution to $50,000, and whether the settlor still intended to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share in the final distribution. After making findings of fact at the status conference, the probate court issued an Order and Opinion directing the final distribution of the Wessels Trust. In the Opinion and Order, the probate court first determined that the Wessels Trust was a discretionary trust and the trustee had the authority to reduce the $100,000 prior distribution listed in the Schedule to $50,000. Then, the probate court determined the Schedule of Prior Distributions was invalid, and the $100,000 and $10,000 prior distributions listed in the Schedule were unenforceable. This rendered its holding that the trustee had the authority to reduce the $100,000 to $50,000 moot.[2] Finally, the probate court determined that the plain language of the Wessels Trust expressed that the settlor intended to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share.

We first address the probate court's conclusion that the Schedule of Prior Distributions was invalid and, therefore, the $100,000 and $10,000 prior distributions were unenforceable. We conclude the probate court did not have sufficient information before it to make an informed decision on this issue without holding an evidentiary hearing. As noted, a probate court has discretion to determine whether an evidentiary hearing is necessary. *Kernen*, 252 Mich App at 691. Generally, the purpose of an evidentiary hearing is to assist the probate court to make an informed decision on a factually disputed issue. See *Parks v Parks*, 304 Mich App 232, 239-240; 850 NW2d 595 (2014).

Upon the death of both settlors, the amended Wessels Trust instructed that Scott Wessels and Lynn Molter would each receive ¼ of trust assets and her other two children and four named grandchildren would each receive 1/12 of trust assets. Relevant to the final distribution, the Wessels Trust instructed that the settlors may leave a schedule identifying recipients of prior

---

[2] We note that the probate court's holdings that the Wessels Trust was a discretionary trust and that the trustee was authorized to reduce the $100,000 prior distribution to be credited to George T. Wessels's share to $50,000 were both erroneous. The trust provisions directing the trust's final distribution do not come within the meaning of a "discretionary trust" as defined by this state's caselaw, which classifies a discretionary trust as one in which a trustee may pay to a beneficiary some or any amount of income or principal in her discretion. See *Miller v Dep't of Mental Health*, 432 Mich 426, 429-431; 442 NW2d 617 (1989). The trust provisions also do not come within the meaning of "discretionary trust provisions" as defined by the Michigan Trust Code, MCL 700.7101 *et seq*. See MCL 700.7103. Instead, the relevant trust provisions in § 2.5 contained mandatory directives that the trustee was obligated to comply with when administering the final distribution of trust assets. See MCL 700.7801 ("Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article.").

distributions and noting amounts that should be accounted for in the respective recipient's share of the final distribution.

In her proposed final distribution of trust assets, the trustee relied on a purported Schedule of Prior Distributions that identified a distribution of $10,000 to Scott Wessels and a distribution of $100,000 to George T. Wessels. Omissions and inconsistencies on the face of the Schedule raises questions regarding its validity that cannot be resolved without an evidentiary hearing. The Schedule listed the two prior distributions and their respective dates of acknowledgment, but contains no other description of the prior distributions. Additionally, a column for the settlor's initials next to the prior distributions was left blank. The final page of the Schedule contains Carol Wessel's signature; however, a signature line for a notary public was left blank. There are also internal inconsistencies in the dates written on the document.

The Wessels Trust states that the settlors "may leave a Schedule of Prior Distributions" and instructs that the "Schedule is binding upon Trustee." However, the trust instrument contains no language requiring the Schedule to be executed by a signed and notarized document or some other express method. Given that there was no particular manner in which the settlor was required to execute the Schedule, there are questions of fact whether the document provided to the probate court was a valid and enforceable Schedule. The document could be characterized as a poorly executed Schedule with scrivener's error, an unexecuted draft, or even a fraudulent document drafted by someone other than the settlor.

At the status conference, appellant asserted that there were disputed questions of fact regarding the validity of the document and requested an evidentiary hearing. Although it declined to hold an evidentiary hearing, the probate court agreed that there were disputed factual issues. The probate court blamed the unresolved factual dispute on the parties for their failure to present evidence:

> So, [appellant's trial counsel], I have arrived at that decision because that's the only issue in dispute, are those two amounts, on the one hand. On the other hand, there is absolutely—none of the parties have submitted a single solitary piece of evidence with regard to the legitimacy of those two numbers. The $100,000 and the $10,000. And what I mean by that is, we don't—if you look at the schedule, it doesn't say whether it's a gift or a loan. There's no date that is ascertainable as to any instrument or document out there. It is a—it's a—it's a—in my view, it's a random arbitrary list, no initials on it. It requires initials. Again, we don't know if it's a loan or a gift. Which is set forth in the trust, Section 2.4 regarding Accounting for Prior Distributions. Some of which that language, to me, is not clear either. But, the trust—the—the—the Trustee, Carol Wessels, at the time, she did not articulate anything about loan or a gift. It's a number on a piece of paper and there's no way that I can infer, reasonably, or anybody in my opinion, can reasonably infer whether it's a gift or a loan.

The only reason the probate court gave for not holding an evidentiary hearing on this issue was because it believed the parties failed to make an offer of proof. The record reflects that the parties had little opportunity to do so.

The probate court disposed of this case in an abbreviated manner. After appellant filed the petition for the probate court to take jurisdiction over the Wessels Trust, the probate court ordered the interested parties to file memorandums of law to identify the issues in dispute. The parties submitted memorandums, but did not have the opportunity to engage in responsive briefing. Shortly thereafter, the probate court held the status conference. At the status conference, the probate court declared that it would make findings of fact over appellant's objection. The parties informed the probate court that they did not receive notice of the status conference until the previous night. Consequently, the parties had little notice that they would be addressing the validity of the Schedule at the status conference and would need to have offers of proof prepared. Because the probate court decided disputed questions of fact without an evidentiary hearing and its only reason for denying appellant's oral motion for an evidentiary hearing was not supported by the record, the probate court's decision to issue an Opinion and Order without holding an evidentiary hearing on this issue was not within the range of reasonable and principled outcomes. See *In re Temple Marital Trust*, 278 Mich App at 128.

The second issue the probate court decided without an evidentiary hearing was whether the settlor intended to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share in the final distribution. Resolution of this issue involves interpretation of § 2.5 of the Wessels Trust. See *In re Kostin*, 278 Mich App at 57. In its Opinion and Order, the probate court concluded that the plain language of the trust expressed the settlor's intent to credit the value of the Parcel against Scott Wessels's share. We conclude that given the state of the record, the multiple proffered explanations for what was meant by the parties and what various documents mean, § 2.5 is ambiguous and, therefore, the probate court erred by relying solely on the language of the trust to ascertain the settlor's intent regarding the Klug-Lincoln Parcel.

Section 2.5 was amended twice after the original trust instrument was executed. In the First Amendment, the settlor stated that she revoked the original § 2.5 in its entirety and replaced it. The amended § 2.5 restated the settlor's plan for the final distribution of trust assets, but added that the trustee shall value the Klug-Lincoln Parcel at $137,000 and credit it to Scott Wessels's share of the remaining trust assets in the final distribution. In the Second Amendment, the settlor stated that "Article Two, Section 2.5 shall be amended to read as follows," then changed the final distribution to give Scott Wessels and Lynn Molter each a ¼ share of the final distribution and to give the other two children and four listed grandchildren each a 1/12 share of the final distribution. Thereafter, the Second Amendment restated Subsections (a) through (e) from the First Amendment and deleted Subsection (f) from the First Amendment. The Second Amendment made no mention of the Klug-Lincoln Parcel.

In its opinion and order, the probate court concluded that the unambiguous language of the amendments showed that the settlor intended to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share. In support of its holding, the probate court noted that in the First Amendment, the settlor used the phrase "revoke the first paragraph of Section 2.5 Distribution to Family in its entirety" to revoke and replace the original § 2.5. In contrast, the Second Amendment used the phrase "amended to read as follows . . . ." According to the probate court, the differing language used in the First and Second Amendments showed that the settlor only intended to make changes and additions to the amended § 2.5 without fully revoking it. Consequently, the probate court concluded that the Second Amendment did not revoke the portion of the First Amendment that credited the value of the Klug-Lincoln Parcel to Scott Wessels's share.

This is a reasonable interpretation of § 2.5; however, the language used in the Second Amendment is imprecise and susceptible to more than one interpretation. After the Second Amendment states "Article Two, Section 2.5, shall be amended to read as follows" the amendment proceeds to entirely restate Subsections (a) through (e) from the First Amendment. Then, the Second Amendment states that it deleted Subsection (f). Given that the Second Amendment entirely restates § 2.5 and its subsections without mentioning the Klug-Lincoln Parcel, it is also a reasonable interpretation to conclude that the portions of the First Amendment that were not restated in the Second Amendment were intentionally omitted or deleted from the Wessels Trust. The trust is susceptible to either construction and is, therefore, patently ambiguous. See *In re Woodworth Trust*, 196 Mich App at 327-328.

In its Opinion and Order, the probate court only relied on the language of the Wessels Trust and its amendments to determine that the settlor intended to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share. Because the settlor's intent cannot be ascertained from the ambiguous language of the Trust alone, the probate court should have granted appellant's motion for an evidentiary hearing on this issue as well. See *id*. At the status conference, the probate court was presented with two deeds addressing ownership of the Klug-Lincoln Parcel. On remand, the probate court may consider these deeds or other extrinsic evidence presented by the parties to ascertain the settlor's intent in relation to the Klug-Lincoln Parcel.

Because disputed questions of fact remain regarding the validity of the Schedule of Prior Distributions and the settlor's intent to credit the value of the Klug-Lincoln Parcel to Scott Wessels's share of the final distribution, we vacate the probate court's Opinion and Order directing the final distribution of the Wessels Trust. We remand this case so that the fact-finder may resolve the disputed questions of fact with the benefit of extrinsic evidence from the interested parties and the opportunity to evaluate the credibility of witnesses that may appear before it.

We vacate the probate court's Order and Opinion and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel